COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| DOYLE ANDERTON, | § | No. 08-12-00212-CV |
| Appellant, | § | Appeal from the |
| v. | § | 422nd District Court |
| E. DOUGLAS LANE, DORIS S. LANE. LARRY D. LANE, TERI L. LANE, | § | of Kaufman County, Texas |
| KELLY L. LANE, AND LISA K. LANE, | § | (TC#79946-422) |
| Appellees. | § | |

## **O P I N I O N**

Doyle Anderton appeals the trial court's judgment in favor of E. Douglas Lane, Doris S. Lane, Larry D. Lane, Teri L. Lane, Kelly L. Lane, and Lisa K. Lane (collectively referred to as "Lane"), stemming from Lane's trespass to try title suit. In a single issue on appeal, Anderton contends no legally sufficient evidence supports the trial court's finding that Lane adversely possessed a portion of the right-of-way. We affirm.

## **BACKGROUND**

Lane owns and resides on certain real property known as the Lane Family Farm, which is located off County Road 324 in Kaufman County, Texas. There is an abandoned railroad right-of-way located across the Lane Family Farm that Lane claims to have been in actual, open,

notorious, exclusive, hostile and adverse possession of since 1959. In June 2009, Lane learned Anderton purchased the right-of-way from the railroad. Anderton subsequently tried to sell the right-of-way to Lane.

In November 2009, Lane filed suit claiming adverse possession of the right-of-way. After a bench trial on May 14, 2010, the trial court took the matter under advisement pending additional briefing from the parties. On May 28, 2010, the trial court notified the parties that it had determined that the right-of-way was adversely possessed by Lane and requested that a proposed judgment be prepared in accordance with its ruling. The trial court subsequently requested that Anderton provide a copy of a survey of the right-of-way that he had prepared prior to the bench trial. Anderton declined to provide a copy of the survey and contended that the trial court's pending judgment would not be based on evidence that was submitted at trial as that survey was not admitted into evidence. Lane submitted a revised proposed final judgment to the trial court which included a legal description of the right-of-way that was "extrapolated from the evidence…admitted [at trial]." Anderton objected to the revised proposed final judgment to which Lane responded.

In January 2012, Anderton filed a "Motion for Judgment" asserting that any judgment for Lane would be improper because Lane failed to "tender evidence describing adequately the property in dispute," and that he was entitled to a take-nothing judgment. In February 2012, Lane filed a motion to reopen evidence to allow the admittance of a survey of the disputed right-of-way. Lane also filed a motion to sign judgment. After a hearing on the parties' motions, the trial court, *sua sponte,* granted a partial new trial on the issue of the legal description of the right-of-way. The trial court concluded it would enter judgment in accordance with its 2010 letter ruling, and included the legal description of the right-of-way contained in the survey offered into evidence at

2

the 2012 hearing.   On May 25, 2012, the trial court signed a final judgment that found Lane owned all of the property by adverse possession, incorporated Lane's 2012 survey of the property, and quieted title to the property in Lane.   This appeal followed.

## DISCUSSION

In his sole issue on appeal, Anderton asserts that "[n]either this court nor the trial court can determine the precise boundaries of the 'front' part adversely possessed and the 'back' part that it [did] not."   Appellant argues this Court should reverse the judgment and render judgment that the Lanes failed to establish adverse possession as to "the back 'pasture' portion of the right-of-way."[1]

### Standard of Review

A party seeking to establish title to land by adverse possession has the burden to prove every fact essential to that claim by a preponderance of the evidence.   *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990).   Because Anderton did not have the burden of proof at trial, he must show there is no evidence to support the trial court's adverse finding.   *See Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983).   In considering a no-evidence issue, we view the evidence in the light most favorable to the finding and disregard all evidence and inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996).   If there is more than a scintilla of evidence to support a finding, we must uphold it.   *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).   More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.   *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*,

---

[1] In his brief, Appellant refers to the property in dispute as the "back pasture" portion of the right-of-way while Lane refers to that same portion as the "northern" end of the right-of-way.   We use Anderton's designation in this opinion.

77 S.W.3d 253, 262 (Tex. 2002).

## ADVERSE POSSESSION

Adverse possession is an "actual and visible appropriation of real property commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002). To prevail on a claim of adverse possession, a claimant must establish, by a preponderance of the evidence, (1) the actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; and (4) that is peaceable; (5) that is exclusive; and (6) involves continuous cultivation, use, or enjoyment throughout the statutory period. *Kazmir v. Benavides*, 288 S.W.3d 557, 561 (Tex.App. – Houston [14th Dist.] 2009, no pet.). The parties do not dispute that the applicable duration in this adverse possession case is ten years. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(a) (West 2002).

Anderton argues Lane used different parts of the right-of-way for different purposes. Specifically, Anderton asserts Lane used the front portion of the right-of-way as a driveway and the back portion as a pasture. Anderton concedes there is sufficient evidence to establish Lane adversely possessed the front portion of the right-of-way. However, he maintains there was no adverse possession of the part of the right-of-way that was used as a pasture for grazing livestock. Anderton argues Lane's only evidence concerning the back portion of the property is that Lane used it for grazing livestock.

In response, Lane maintains the evidence is legally sufficient to support the trial court's judgment that he adversely possessed the entire right-of-way. Lane further contends that, even assuming that he used the "northern end" of the right-of-way solely for grazing, the evidence shows he designedly enclosed the right-of-way by fencing in the entire family farm which

4

included the "southern and northern terminal ends of the right-of-way[.]" Lane also argues that even if there was insufficient evidence to establish that he designedly enclosed the right-of-way, there was sufficient evidence showing "non-grazing use of the northern end of the right-of-way such that the record owner would have notice of the hostile claim."

Under Texas law, use of land for grazing cattle, fails to establish adverse possession as a matter of law, unless the fence used is a "designed enclosure" as opposed to "casual fences." *See Rhodes*, 802 S.W.2d at 646; *McDonnold v. Weinacht*, 465 S.W.2d 136, 141-43 (Tex. 1971). Unless the claimant establishes he erected the fence with the purpose of enclosing the property at issue, the fence is a "casual fence" rather than a "designed enclosure." *Rhodes*, 802 S.W.2d at 646.

*The Evidence Presented at Trial*

At trial, Lane testified that he built a home on his property in 1959 and explained that the railroad stopped running trains on the right-of-way in 1958. Lane used the right-of-way as a driveway to get from County Road 324 to his house. According to Lane he used the right-of-way without permission from the railroad. In order to use the right-of-way as a driveway, Lane had to bulldoze a railroad bridge, spread gravel, and build up the elevation of the right-of-way.

Lane explained there were no fences on the property when he built his home and started farming the property. He testified that "[e]verything had to be fenced" and that he "erected the fences." Lane testified he placed a cattle guard on the property and installed a "swing gate" at County Road 324 which he closed every night. The gate and fences were constructed to keep cattle from leaving the property and for security at night. When asked if it was his testimony that he fenced in the right-of-way, Lane responded "[t]hat [it] was up to the individual farmer to fence his farm."

Inside of the fences, Lane bailed hay on the right-of-way. He also grazed livestock and farmed on the right-of-way. Lane bulldozed and dammed the "canyon" portion of the right-of-way and built stock ponds for the stock. The Lane family also used the stock ponds for swimming. Lane also harvested gravel from the right-of-way.

According to Lane, between 1959 and June 2009, he exclusively used the right-of-way without objection from anyone. He agreed that if the railroad had bothered to look at the property for the last fifty years, it would have seen him using the entire right-of-way because he was farming, ranching, and living on the right-of-way.

When viewed in a light most favorable to the verdict, more than a scintilla of evidence exists that Lane adversely possessed the entire right-of-way for the requisite statutory period. *City of Keller*, 168 S.W.3d at 822. The evidence shows that Lane constructed a home in 1959 and utilized the right-of-way as a driveway without permission and without objection. Lane erected fences and "fenced in everything." The purpose of the fencing was to keep cattle from leaving the property and for security at night. Moreover, Lane used the right-of-way to graze livestock and farm. He bailed hay, harvested gravel, and built stock ponds on the right-of-way. Lane utilized the entire right-of-way in this fashion from 1959 until the time that Anderton purchased the right-of-way in June 2009. Accordingly, we conclude the evidence is legally sufficient to support a claim of adverse possession as to the entire right-of-way including the "back pasture" portion of the right-of-way.

Finally, Anderton argues that this Court should not consider the survey admitted into evidence during the "partial new trial" in determining whether the evidence presented sufficiently established the boundaries of the "driveway" and "pasture" portions of the right-of-way. Relying on *In re Lovito-Nelson*, 278 S.W.3d 773, 775 (Tex. 2009) (orig.

6

proceeding), Anderton argues that the survey was improperly admitted into evidence after trial because the trial court did not sign a written order granting a new trial. We are not persuaded by Anderton's reliance on *In re Lovito-Nelson*. In *In re Lovito-Nelson*, the Texas Supreme Court conditionally granted a petition for mandamus after holding that a docket entry reflecting the granting of a motion for new trial along with the entry of a scheduling order did not satisfy the requirements of Rule 329b(c) of the Texas Rules of Civil Procedure. *Id.* at 775-76. The Supreme Court expressly stated:

> Rule 329b(c) requires a written order to grant a new trial. ... It is important that the requirement of a written order granting a motion for new trial be a bright-line rule. Otherwise, one might argue that all sorts of conduct should be given the same effect-a trial setting or other setting, a status conference, a hearing on a discovery motion, a request for discovery-the list is endless. The uncertainty would carry over to appellate deadlines and possibly give rise to mandamus proceedings, like this one. The requirement is not difficult to meet, and the movant who fails to satisfy it is not left without possibility of relief. He may still attempt to prosecute an appeal, a restricted appeal, or a bill of review. But a motion for new trial is not granted without a signed, written order explicitly granting the motion.

*Id.* at 775-76. The instant case is distinguishable from *In re Lovito-Nelson* which dealt with a motion for new trial filed by a party after the trial court signed a "Final Order in Suit Affecting the Parent-Child Relationship," whereas here, the issue is a partial new trial granted on the court's own motion before a final judgment was signed by the trial court. *See id.* at 774. Accordingly, we find *Lovito-Nelson* to be inapplicable and conclude the survey was properly before the trial court and this Court is not barred from considering the survey attached to the trial court's May 25, 2012 judgment.

Issue One is overruled.

## CONCLUSION

7

We affirm the judgment of the trial court.


                                        GUADALUPE RIVERA, Justice

July 23, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

8