# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00731-CV

**Juana Mendez Valdez, et vir Juan Valdez, Appellants**

**v.**

**Melody Mueller Moerbe, Appellee**

### FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT
### NO. 2013V-052, HONORABLE DAN R. BECK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a trespass to try title suit in which Juana Mendez Valdez and her husband Juan Valdez (collectively, the Valdezes)[1] sought to establish title to certain property in Fayette County based on the five and ten-year adverse possession limitations statutes. *See* Tex. Civ. Prac. & Rem. Code §§ 16.025 (adverse possession five-year limitations period), .026 (adverse possession ten-year limitations period). The case was submitted to a jury, which returned negative answers to the Valdezes' adverse possession issues. On appeal, the Valdezes assert that they proved title to the property under both the five and ten-year adverse possession limitations statutes as a matter of law and that there was reversible error in the jury charge. We will affirm.

---

[1] Unless otherwise indicated, the name "Valdez" refers to Juana Mendez Valdez.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1999, Arnie Marie Gordon conveyed to Valdez a piece of property in Flatonia (the Valdez Property). The Gordon Deed contained the following metes and bounds description of the property conveyed:

> All that certain tract or parcel of land, being the west half of a tract sold by Milam McVey and wife, Lizzie McVey, to Amanda Evans and being described as follows, to wit:
>
> BEGINNING at the North East corner of a tract sold to Adeline Dillard from which a black jack marked X brs. South 60° East 5 vrs; thence South 83 vrs. to a stake; thence East 33 ½ vrs; thence North 83 vrs. to a stake; thence West 33 ½ vrs. to place of beginning.
>
> Being the same property described in Deed, Amanda Evans to Fannie Evans Taylor, dated January 3, 1914, of record in Volume 96, Page 440 of the Deed Records of Fayette County, Texas.
>
> Also being the same property described in a <u>Warranty Deed</u>, Christopher Ray Houston to Mike Steinhauser, dated May 22, 1984, of record in volume 662, Page 134 of the Deed Records of Fayette County, Texas.
>
> Also being the same property described in a <u>Special Warranty Deed</u>, Mike Steinhauser et ux to Arnie Marie Gordon, dated January 6, 1992, of record in Volume 837, Page 710, Deed Records of Fayette County, Texas.

Neither Gordon nor Valdez obtained a survey of the Valdez Property. In May 2000, Valdez placed a mobile home on what she believed to be a portion of the Valdez Property. In fact, this mobile home was located on the eastern boundary of a tract of land north of and partially adjacent to the Valdez Property that was at that time owned by Melody Mueller Moerbe and her uncle R.G. Seeberger, Jr. (the Seeberger Property). Moerbe and Seeberger had inherited the property from

2

Moerbe's mother, Lillie S. Seeberger, in 1992. The Seeberger Property is described in metes and

bounds as:

> All that certain tract of land situated in Fayette County, Texas, and described as follows, to wit:
>
> A part of the Muldoon League #14 and a part of 2-1/2 acres more or less, conveyed to Armin, et al, September 1, 1891, by the Sheriff of Fayette County, and described by metes and bounds as follows:
>
> BEGINNING at a stake for corner, the northwest corner of Lonnie Houston's ½ acre tract;
>
> THENCE North 75 varas;
>
> THENCE East 75 varas;
>
> THENCE South 75 varas to a stake for the northeast corner of Lonnie Houston's tract;
>
> THENCE West 75 varas to the place of beginning, containing 1 acre of land, more or less.
>
> Being the same property described in Deed dated January 26, 1957, executed by Travis F. Collins and wife, Beulah Collins, to Lillie S. Seeberger, recorded in Volume 294, Page 479, Deed Records of Fayette County, Texas.
>
> LESS, HOWEVER, all that certain tract or parcel of land lying and being situated in the County of Fayette, State of Texas, containing 0.008 acre of land, and being the same property described in Deed dated January 16, 1967, executed by Lillie Seeberger to the State of Texas, recorded in Volume 384, Page 499, Deed Records of Fayette County, Texas.[2]

Both the Valdez Property and the Seeberger Property are located within a larger area bounded on the

north side by Interstate Highway 10 and on the west, south, and east sides by Hackberry Street,

---

[2] Lillie S. Seeberger had conveyed this 0.008 acre portion of her property to the State of Texas for use in the construction of an access road to Interstate Highway 10.

Collins Street, and Walnut Street respectively. When Valdez placed her mobile home on the eastern boundary of the Seeberger Property in May 2000, the area was undeveloped and covered with thick brush. Valdez testified that her husband spent three months clearing by hand the section where the first mobile home was to be located. Later, in December 2005, Valdez's husband cleared an area for a second mobile home on the southern boundary of the Seeberger Property. Valdez testified that, over time, her husband cleared the entirety of the Seeberger Property, along with the Valdez Property and the remainder of the property bounded by IH 10 and Hackberry, Collins, and Walnut Streets. She did not, however, provide a timeline for the clearing activities other than to associate them generally with the placement of mobile homes. According to Valdez, in late 2005 her husband built a small storage shed, which is located on the west side of the Seeberger Property.

Valdez testified that she believed that Gordon had conveyed to her all the land bounded by IH 10 and Hackberry, Collins, and Walnut Streets. She testified that she believed this to be the case not based on the metes and bounds description contained in the Gordon Deed, but because Gordon had "showed [her] the four corners" of the property Valdez was purchasing. In 2006, Valdez sought to have the City of Flatonia annex the property she believed she owned in order to obtain city utility services for the two existing mobile homes and for other mobile homes she intended to place on the property. The City told her that she needed to provide it with a survey of the property she sought to have annexed. Valdez retained Tim Hearitage to prepare a survey of her property. Hearitage testified that Valdez showed him the property she believed she owned, which by that time was mostly cleared. Hearitage testified that after he prepared a survey that depicted the property described in the Gordon Deed, it became apparent that the property Valdez believed

4

she owned, and was occupying, was much larger than the 0.223 acre tract described in Gordon's conveyance to her. Although Valdez believed she owned the entire area bounded by IH 10 and Hackberry, Collins, and Walnut Streets, the property actually conveyed to her by Gordon was only a portion of that area.

Valdez then went to see Flatonia attorney Mike Steinhauser. Steinhauser had been advising Valdez with respect to her attempts to have the City annex the property Valdez believed she owned. Steinhauser had also, in 1992, sold to Gordon the property Gordon conveyed to Valdez in 1999, and Steinhauser's brother had prepared the Gordon Deed. Steinhauser testified that after he looked at the survey Hearitage prepared he told Valdez that "she had a problem." Steinhauser testified that he then "did what lawyers do" and attempted to help Valdez "cure her title" to the property she had been under the impression that she had purchased from Gordon. To accomplish that goal, Steinhauser prepared an Affidavit of Use and Possession in which Valdez averred that she was the owner of a 1.93 acre tract of land bounded by IH 10, Walnut Street, Collins Street, and Hackberry Street (the 1.93 Acre Tract). Attached as an exhibit to the Affidavit is the following metes and bounds description of the 1.93 Acre Tract:

> 1.93 acres of land, more or less, City of Flatonia, M. Muldoon League No. 14, A-76, Fayette County, Texas, including the same land described in Special Warranty Deed, Arnie Marie Gordon to Juana Melendez, dated February 16, 1999 of record in Volume 1055, Page 381, Official Records of Fayette County, Texas and being more particularly described by metes and bounds as follows, to-wit:

> BEGINNING at an iron rod found for the Northeast corner of a 1.76 acre tract described in a deed to Kaplena M. Patel and Manish M. Patel of record in Volume 1307, Page 589, Official Records of Fayette County, Texas, same being in the southern boundary of the access road of Interstate Highway 10 and the western boundary of Hackberry Street.

5

THENCE North 84° 00'00" East 283.40 feet along the southern boundary of the access road of Interstate Highway No. 10 to a point for the northeast corner hereof;

THENCE South 332.52 feet bisecting Walnut Street to a point for the southeast corner hereof;

THENCE West 246 feet along the northern boundary of Collins Street to a point for the Southwest corner hereof;

THENCE North 302 feet to the Point of Beginning and containing 1.93 acres of land more or less.

Steinhauser testified that he prepared this "perimeter description" of the 1.93 Acre Tract "to try to match up what Juana thought she bought." According to Steinhauser, the purpose of the Affidavit of Use and Possession, which he later filed in the Official Records of Fayette County, was to provide notice to the world that Valdez was claiming ownership of the 1.93 Acre Tract. Steinhauser also prepared a "Deed Without Warranty" from Gordon to Valdez purporting to convey the 1.93 Acre Tract. Gordon executed the Deed Without Warranty on May 4, 2007, and it was filed in the Official Records of Fayette County, on May 16, 2007. Steinhauser sent a copy of the Deed Without Warranty to the Fayette County Appraisal District, which then began assessing property taxes on the 1.93 Acre Tract. The appraisal district sent the tax notices to Valdez and she paid them.[3]

After learning of the discrepancy between the description of the property conveyed to her in the Gordon Deed and the 1.93 Acre Tract, Valdez continued with her plan to place more mobile homes on the 1.93 Acre Tract. In 2007, she placed a third mobile home on land that was part

---

[3] The Fayette County Appraisal District continued to assess taxes on the Seeberger Property, which Moerbe paid. Thus, although there is no evidence that the County was aware that the Seeberger Property was subsumed in the 1.93 Acre Tract, it was receiving tax payments on that property from two different people.

of the Valdez Property and, after that, placed two more mobile homes along the eastern boundary of the Seeberger Property south of the first mobile home. Finally, in 2008, Valdez placed a mobile home near the corner of Hackberry Street and Collins Street on land that was not part of either the Valdez Property or the Seeberger Property.

Moerbe testified that while she was aware of the general location of the Seeberger Property, she did not know where the property lines actually were. She testified that her uncle and another relative periodically checked on the property, and that she drove by it in the late 1990s on her way from her home in La Grange to family reunions in Schulenberg. Moerbe testified that at some time around 2009, her husband discovered that there might be someone occupying part of the Seeberger Property. Moerbe testified that she saw mobile homes in the area near where she believed the Seeberger Property was located, but was not certain that they were actually on her land. Moerbe attempted to contact the occupants of the first mobile home to try to "work something out," but got no response. These attempts included leaving a note on the mobile home's door, speaking to Valdez's daughter, and stopping by periodically to try to meet with Valdez. In January 2012, Moerbe's attorney sent a letter to Valdez by certified mail advising her that Moerbe owned the Seeberger Property and that Valdez was occupying that property without Moerbe's permission or consent. The letter demanded that Valdez vacate the Seeberger Property or Moerbe would initiate legal proceedings to have her and her belongings removed. When Valdez did not respond, Moerbe filed a forcible entry and detainer action in Fayette County Justice Court on March 1, 2012. After being served with the forcible entry and detainer action, Valdez again went to Steinhauser. Steinhauser then sent Moerbe's attorney a letter stating:

Juana brought me your petition. Ask Melody [Moerbe] to spend a few hundred dollars on a good survey. If Juana has trespassed I will tell her she has to move. In that section of town, the legal descriptions are very irregular. Thank you.

Steinhauser also filed a general denial in the forcible entry and detainer action on Valdez's behalf, which stated:

> Defendant does not dispute Plaintiff's "ownership" of her property. Defendant disputes that Defendant is "in possession" of Plaintiff's property. Plaintiff should provide written proof via a bona fide up to date survey performed by a Registered Professional Licensed Surveyor to determine the actual boundaries of Plaintiff's property and Defendant's property.
>
> Defendant is the owner of the real property described in a <u>Special Warranty Deed</u> from ARNIE MARIE GORDON dated February 16, 1999 of record in Volume 1055 Page 381, Official Record of Fayette County, Texas [the Gordon Deed].[4]

Although the record does not include all the justice court filings, the parties do not dispute that Moerbe prevailed in her forcible detainer suit and that Valdez filed an appeal to the Fayette County Court seeking a trial de novo. *See* Tex. R. Civ. P. 510.10 (providing for trial de novo from judgment in eviction case). While that case was pending, the Valdezes filed the underlying trespass to try title suit in Fayette County District Court claiming they had obtained title to the Seeberger Property (as well as the rest of the 1.93 Acre Tract) by adverse possession. Thereafter, Valdez filed a plea to the jurisdiction in the county court forcible entry and detainer action asserting that the court lacked subject-matter jurisdiction because the issues of title and possession were intertwined such that possession could not be adjudicated without first determining title. *See Dormady v. Dinero Land*

---

[4] This pleading made no mention of the Deed Without Warranty that, unlike the Gordon Deed, contained a property description that included the Seeberger Property.

8

*& Cattle Co.*, 61 S.W.3d 555, 557 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.) (question of title may be so intertwined with issue of possession that possession may not be adjudicated without first determining title and neither justice court nor county court on appeal from forcible detainer action has jurisdiction to make adjudication regarding title). The county court then abated the case pending resolution of the question of title to the Seeberger Property.

The underlying trespass to try title suit was tried to a jury. At the close of the evidence, the Valdezes moved for an instructed verdict on their claim to have established title to the Seeberger Property based on the ten year limitations statute. *See* Tex. Civ. Prac. & Rem. Code § 16.026. The Valdezes did not move for an instructed verdict on their claim to have established title based on the five year limitations statute. *See id.* § 16.025. The trial court denied the motion for instructed verdict. The trial court submitted to the jury a charge that asked: (1) whether the Valdezes maintained peaceable and adverse possession of the Seeberger Property for any ten year period between February 16, 1999 (the date the Gordon Deed was executed) and March 1, 2012 (the date Moerbe filed the forcible detainer suit) and (2) whether the Valdezes maintained peaceable and adverse possession of the Seeberger Property for any five year period beginning on or after May 16, 2007 (the date the Deed Without Warranty was filed). Both questions were accompanied by the instruction that "peaceable possession" means "the possession, use and enjoyment of real property that is continuous and is not interrupted by an adverse suit to recover the property." The jury answered "No" to both questions.

The Valdezes then filed a motion for judgment notwithstanding the verdict asserting that they had presented evidence establishing, as a matter of law, that they had title to the Seeberger

9

Property through both the five and the ten-year limitations statutes.  The Valdezes asked the trial court to disregard the jury's answers and render judgment in their favor.  The appellate record does not include an order on the Valdezes' motion for judgment notwithstanding the verdict.  Thereafter, the trial court rendered judgment on the jury's verdict that the Valdezes had not adversely possessed the Seeberger Property and that Moerbe had clear and indefeasible title to it.  This appeal followed.

## DISCUSSION

### *Standard of Review*

In their first issue, the Valdezes assert that the trial court erred in denying the motion for instructed verdict and the motion for judgment notwithstanding the verdict.  A motion for instructed verdict, authorized by Texas Rule of Civil Procedure 268, removes the matters at issue from the jury and leads to rendition of judgment as a matter of law.  *See* Tex. R. Civ. P. 268.  A plaintiff is entitled to an instructed verdict only when she has conclusively proven the elements of her claim and reasonable minds could draw only one conclusion from the evidence.  *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978).  A motion for judgment notwithstanding the verdict, which asks the trial court to disregard the jury's findings and render judgment as a matter of law, is authorized if a directed verdict would have been proper.  *See* Tex. R. Civ. P. 301.  Thus, the Valdezes' complaint that the trial court erred by denying both the motion for instructed verdict and the motion for judgment notwithstanding the verdict is an assertion that the evidence admitted at trial demonstrates, as a matter of law, that they established title to the Seeberger Property through either the five or the ten-year limitations statutes.  *See Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991).  Because we review the denial of a motion for judgment not

10

withstanding the verdict under legal sufficiency principles, we may reverse only when "the law does not allow reasonable jurors to decide otherwise." *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). We must therefore consider whether the evidence at trial proved, as a matter of law, the elements required to establish title through the five or ten-year limitations statutes.[5] In our review, we credit evidence favorable to the verdict if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827; *see Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009).

***Applicable Law***

Adverse possession means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another person. Tex. Civ. Prac. & Rem. Code § 16.021(1). To prevail on a claim of adverse possession, a claimant must establish actual and visible possession of the disputed property that is (1) adverse and hostile to the claim of the owner of record title; (2) open and notorious; (3) peaceable; (4) exclusive; and (5) involves continuous cultivation, use, or enjoyment throughout the statutory period. *Anderton v. Lane*, 439 S.W.3d 514, 517 (Tex. App.—El Paso 2014, pet.

---

[5] We observe that the motion for instructed verdict addressed only the claim of adverse possession under the ten-year limitations statute. The motion for judgment notwithstanding the verdict addressed both the five year and the ten-year limitations statutes, but the appellate record does not include an order or other notation reflecting the trial court's ruling on that motion. Thus, arguably, the Valdezes have failed to preserve the complaint that the trial court erroneously failed to render judgment in their favor on their claim based on the five-year limitations statute. *See Quintero v. Citizens & S. Factors, Inc.*, 596 S.W.2d 277, 279 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ) (holding that because appellate record did not reflect that motion for judgment notwithstanding verdict was presented to and ruled on by trial court there was no action of trial court before appellate court for review). Nevertheless, we will address the Valdezes' complaint.

denied). One seeking to establish title to land by virtue of the limitations statutes has the burden of proving every fact essential to that claim. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990).

### Ten-Year Statute

To establish title under the ten-year statute, the Valdezes must have proved that the factual elements of an adverse possession claim were met as to the Seeberger Property for a ten year period during which no suit was brought to recover that property. *See* Tex. Civ. Prac. & Rem. Code § 16.026. On appeal, the Valdezes contend that they established as a matter of law that they were in peaceable and adverse possession of the entirety of the 1.93 Acre Tract between June 2000 and February 28, 2012. Thus, according to the Valdezes, they have established title to the entire 1.93 Acre Tract.

The question in this case, though, is limited to whether the evidence conclusively establishes that the Valdezes were in peaceable and adverse possession of a particular portion of the 1.93 Acre Tract, specifically the Seeberger Property. We conclude that it does not. There was evidence at trial that Valdez put a trailer house on the eastern boundary line of the Seeberger Property in 2000 and that another trailer was placed on the southern portion of the Seeberger Property in 2005. There was no evidence, however, that the Valdezes were using, cultivating, or enjoying any other part of the Seeberger Property for a ten year period of time. Although the Valdezes concede that the jury may have believed that they "did not use all of the property at the outset of their occupancy, and consequently did not have exclusive possession of all of [the Seeberger Property] from the beginning," they contend that such a finding is irrelevant because they were not required to use the entirety of the tract for the entire ten-year period. Relying on *Doyle v.*

12

*Ellis*, 549 S.W.2d 62 (Tex. Civ. App.—Waco 1977, no writ), the Valdezes contend that they were only required "to use the land for a purpose to which it is adaptable and capable of being used" and that the "use of so much of it as they could over the period of time that it took to clear it and put it to other use was sufficient." *Doyle* does not, however, support the notion of creeping adverse possession the Valdezes advocate. While *Doyle* does stand for the proposition that the land claimed by adverse possession need only have been used for a purpose to which it is adaptable, it does not stand for the proposition that the land claimed by adverse possession need not have been used at all.[6]

In the present case the jury could reasonably have determined that the Valdezes did not use large portions of the Seeberger Property at all from 2000 to 2005. In any event, the evidence does not conclusively establish that the Valdezes used the entire Seeberger Property for the ten-year statutory period. The trial court did not err in denying the Valdezes' motion for instructed verdict or motion for judgment notwithstanding the verdict with regard to their claim to adverse possession of the Seeberger Property under the ten-year limitations statute.

***Five-Year Statute***

The Valdezes also claim that they established conclusively the elements of their claim of adverse possession under the five-year limitations statute. *See* Tex. Civ. Prac. & Rem. Code

---

[6] Unlike a person claiming title under the ten-year bare possession statute, a person claiming title under the five-year registered deed statute is considered to have constructive possession of *all* the land within the boundaries of his deed not under another's actual possession if he has actual possession of *any* of those lands. *See Sun Operating Ltd. P'ship v. Oatman*, 911 S.W.2d 749, 758 (Tex. App.—San Antonio 1995, writ denied). The Valdezes did not have a registered deed purporting to cover the Seeberger Property until May 2007 and, consequently, may not be considered to have been in constructive possession of any of the Seeberger Property they were not actually using until that date.

§ 16.025. That statute provides that the record owner of a parcel of real property must bring suit against a person who adversely and peaceably possesses the property within five years of the date on which the cause of action accrued or the record owner's claim is barred, provided that the adverse possessor (1) claims the property under a duly registered deed; (2) pays the taxes on the property; and (3) cultivates, uses, or enjoys the property. *Id.* Thus, the adverse possessor can establish title under this statute by proving these elements in addition to the general elements of an adverse possession claim. Because it is dispositive, we first consider whether the Valdezes conclusively established the element of peaceable possession under a duly registered deed for the statutory period. "Peaceable possession" is defined as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property." *Id.* § 16.021(3). The Valdezes filed the Deed Without Warranty describing the 1.93 Acre Tract that included the Seeberger Property on May 16, 2007. On March 1, 2012, before five years had elapsed, Moerbe filed a forcible entry and detainer action against the Valdezes in justice court seeking immediate possession of the Seeberger Property. The Valdezes maintain, however, that the forcible entry and detainer suit did not interrupt their peaceable possession of the Seeberger Property because the forcible entry and detainer suit "was a non entity." Essentially, the Valdezes argue that because the issue of title was so intertwined with the right to possession of the Seeberger Property, neither the county court nor the justice court had subject-matter jurisdiction over the suit. The Valdezes assert that, as a consequence, Moerbe's filing of the forcible entry and detainer action was a "nonevent" that did not serve to interrupt the Valdezes' peaceable possession.

The Valdezes are correct that the only issue the justice court may decide in a forcible entry and detainer action is the right to possession and that it does not have jurisdiction to adjudicate

14

title to land. *See* Tex. Gov't Code § 27.031(b)(4). That does not, however, mean that the justice court and the county court lacked subject-matter jurisdiction over Moerbe's action to determine the right to possession of the Seeberger Property. Rather, a forcible detainer action is cumulative, not exclusive, of other remedies that a party may have and the parties may pursue *both* a forcible detainer action in justice court *and* a suit to quiet title in a district court. *See Dormady*, 61 S.W.3d at 557. "Accordingly, forcible detainer actions in justice court may be prosecuted concurrently with title disputes in district court." *Id.* (citing *Haith v. Drake*, 596 S.W.2d 194, 196 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.)). While the county court did not have jurisdiction to determine title to the Seeberger Property, it did have jurisdiction over the forcible detainer action. The Valdezes are simply incorrect that Moerbe's forcible detainer action should have been dismissed for lack of subject-matter jurisdiction rather than abated pending the district court's resolution of the question of title to the Seeberger Property.

Finally, the Valdezes cite no authority, and we are not aware of any, that supports the proposition that a forcible entry and detainer action does not constitute a "suit to recover the property" that interrupted the Valdezes' peaceable possession of the Seeberger Property. The forcible entry and detainer action was plainly an attempt by Moerbe to assert an interest to the property adverse and superior to the Valdezes' and to interrupt their occupation of land she claimed to own. The Valdezes failed to conclusively establish the element of peaceable possession of the Seeberger Property for the five-year period required by the statute. The trial court did not err in denying the Valdezes' motion for instructed verdict or motion for judgment notwithstanding the verdict with regard to their claim to adverse possession of the Seeberger Property under the five year limitations statute. We overrule the Valdezes' first issue.

15

***Jury Charge Error***

In their second issue, the Valdezes complain that the trial court "charged the jury with inadequate and incomplete instructions regarding the effect and efficacy of the justice court case, and with respect to the required amount of use that claimants must put the property to establish use, possession, and exclusivity." The Valdezes' brief does not elaborate further on the nature of the alleged charge error. They provide no legal argument supporting this issue, nor do they provide this Court with citations to any supporting authorities or to the record. To comply with Texas Rule of Appellate Procedure 38.1, an appellant must articulate the issue we are asked to decide so that we may discern what question of law we are called upon to answer. *See* Tex. R. App. P. 38.1(f). If an appellant fails to articulate the question to be answered, then the brief fails at that point. If the issue is identified, then rule 38.1(i) requires that the brief guide the Court, at least to some degree, through appellant's argument with clear and understandable statements of the contentions being made. Here, the most we can do is guess or speculate regarding the manner in which the Valdezes claim that the jury instructions were deficient. This issue is therefore inadequately briefed and presents nothing for this Court to review. We do observe, however, that we have already explained that the forcible entry and detainer action served to interrupt the Valdezes' peaceable possession of the Seeberger Property and that the Valdezes were required to demonstrate that they had put the entirety of the Seeberger Property to at least some type of use in order to make a claim of adverse possession under the ten year limitations statute. To the extent the Valdezes' second issue constitutes a complaint that the trial court erred by refusing to instruct the jury differently, it is overruled.

16

## CONCLUSION

For the reasons stated in this opinion, we conclude that the trial court did not err in denying the Valdezes' motion for instructed verdict or motion for judgment notwithstanding the verdict. We also conclude that the Valdezes have failed to demonstrate any reversible error in the jury charge. Consequently, we affirm the trial court's judgment.

 

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: April 6, 2016