

# IN THE
# TENTH COURT OF APPEALS

### No. 10-16-00446-CV

**JAY PARKER AND LINDSEY PARKER,**

                                    **Appellants**

 **v.**

**GLENN WEBER,**

                                    **Appellee**

---

### From the 74th District Court
### McLennan County, Texas
### Trial Court No. 2015-2039-3

---

## MEMORANDUM OPINION

---

In this adverse possession case, Glenn Weber[1] sued record owners Jay and Lindsey

Parker to determine ownership of 20.62 acres. After a bench trial, the trial court awarded

Weber title to the disputed property pursuant to the twenty-five-year statutory

limitations provision for adverse possession. *See* TEX. CIV. PRAC. & REM. CODE ANN.

---

[1] During the time this appeal has been pending, Glenn Weber died. Pursuant to Rule 7.1(a) of the Texas Rules of Appellate Procedure, the appeal will remain styled as it was docketed, and the Court "will proceed to adjudicate the appeal as if all parties were alive." *See* TEX. R. APP. P. 7.1(a).

§ 16.027. On appeal, this court reversed the trial court's judgment and rendered judgment that Weber take nothing. Weber filed a motion for rehearing. This court granted the motion without considering its merits and withdrew the opinion and judgment of May 16, 2018. The following is now the opinion and judgment of this court. The Parkers raise legal and factual sufficiency complaints. We affirm the trial court's judgment.

## Background

In December 1958, Glenn Weber purchased 560.9 acres from his father, Albert Weber. In 2014, the Parkers purchased a 102-acre tract from Dick Taylor, receiving a warranty deed. By a separate deed, without warranty, they also purchased from Taylor the 20.62-acre tract at dispute. Weber's property surrounds the 20.62-acre tract on three sides. The disputed area lies south of a creek and at the north end of the 102-acre tract. The true southern boundary line of the Weber property is the creek. However, a fence, described as V-shaped, that is south of the creek, running east and west, separates the disputed 20.62 acres from the 102 acres purchased by the Parkers. Weber relies on this fence to assert ownership of the disputed tract, claiming he bought "everything under fence." After the Parkers began to use the disputed tract, a conflict arose and Weber filed suit claiming ownership. After a trial before the court, the court entered findings of fact and conclusions of law and rendered judgment for Weber based on the twenty-five- year statute of limitations. The Parkers appealed.

**Sufficiency of the Evidence**

In their first issue, the Parkers complain globally that the trial court's judgment should be reversed because there is no evidence, or alternatively, insufficient evidence to support the findings of fact and conclusions of law. They argue that Weber did not prove the elements of adverse possession. Specifically, in issues three and four they assert that his use of the land was not exclusive and was insufficient to put the Parkers on notice of a hostile claim. In issues six and seven, they allege the evidence did not establish Weber used the property for grazing or other alleged uses. In issue five, they contend the fence on the property was a casual fence rather than a designed enclosure and that Weber did not substantially modify the fence. In issue nine, they assert the evidence did not establish that the general reputation in the community was that the disputed property is owned by Weber and the fence is the true boundary. In issue eight, they assert Weber's father had permission to use the land, and in issue two, they assert the evidence does not support a finding of trespass.

STANDARD OF REVIEW

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence used to support them just as we would review a jury's findings. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 302 (Tex. App.—Houston [1st Dist.] 2009, no pet.). We review the

trial court's conclusions of law de novo; that is, we review the trial court's legal conclusions drawn from the facts to determine their correctness. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

A party who challenges the legal sufficiency of the evidence to support an issue upon which it did not have the burden of proof at trial must demonstrate on appeal that there is no evidence to support the adverse finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). If there is any evidence of probative force to support the finding, i.e. more than a scintilla, we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005) (per curiam). In reviewing whether any evidence supports a finding, we consider the evidence in the light most favorable to the verdict. *Id*. Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Exxon Corp.*, 348 S.W.3d at 215. We credit favorable evidence if a reasonable finder of fact could, and disregard contrary evidence unless a reasonable finder of fact could not. *Id*.

Even if the evidence is undisputed, it is within the province of the fact finder to draw whatever inferences it chooses, so long as more than one is possible and the fact finder is not required to guess. *City of Keller v. Wilson*, 168 S.W.3d 802, 821 (Tex. 2005). Therefore, when the appellate court reviews the evidence in a light [most] favorable to the verdict, the reviewing court "must assume [the fact finder] made all inferences in

favor of [its] verdict if reasonable minds could, and disregard all other inferences in [its] legal sufficiency review." *Id.*

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.—Tyler 2011, no pet.). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). In reviewing the factual sufficiency of the evidence, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998); *Cain*, 709 S.W.2d at 176. The reviewing court may not substitute its opinion for that of the trier of fact, as it is the fact finder's role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

APPLICABLE LAW

The doctrine of adverse possession is based on statutes of limitation for the recovery of real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021-.034. If statutory requisites are met, a person may claim title to real property presently titled in

another and ultimately title to the property vests with the adverse claimant. *See id*. § 16.030(a). Adverse possession is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutory period. *Id*. § 16.021(1). Possession must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Harlow v. Giles*, 132 S.W.3d 641, 646 (Tex. App.—Eastland 2004, pet. denied).

The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must usually show as part of his case that the land in dispute was "designedly enclosed." *McDonnold v. Weinacht*, 465 S.W.2d 136, 142 (Tex. 1971). When the fence existed before the claimant took possession and the claimant failed to demonstrate the purpose for which the fence was erected, the fence is considered a "casual fence" and generally does not suffice to show adverse possession. *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990) (op. on reh'g). The rule that a preexisting fence is a casual fence is a mere presumption, however, and may be rebutted if the claimant makes a sufficient showing that the fence "designedly enclosed" the tract claimed by adverse possession. *See Butler v. Hanson*, 455 S.W.2d 942, 945-46 (Tex. 1970); 16 William V. Dorsaneo III, *Texas Litigation Guide* § 250.02[3][c] (2023). Additionally, a "claimant may so change the character of a casual fence that it becomes a designed enclosure." *Rhodes*,

802 S.W.2d at 646. The nature of the fencing and its importance as evidence of adverse possession is a question for the trier of fact. *See id.*; *Ogletree v. Evans*, 248 S.W.2d 804, 806 (Tex. Civ. App.—Beaumont 1952, writ ref'd n.r.e.).

PERTINENT EVIDENCE

Dick Taylor, previous record title holder of both the disputed property and the 102 acres, testified that he did not use the property. He was aware that someone used the land but denied knowing who it was. He never saw any cattle or activity on the land. But while he owned the property he was only "down there" two or three times. He was aware of a prior lawsuit filed by Roane Lacy, a predecessor in title of the disputed area, against Weber based on a dispute over the use of the land. He testified that the disputed area was fenced on its south side, while three sides were not fenced. There was no fence along the creek, and the fence does not go all the way to the creek or the bluff. He stated there was a gate on the fence separating it from the 102 acres.

Larry Mattlage, who grew up on his father's land which adjoins Weber's property on the west side of the disputed property, testified that Albert Weber has been in exclusive possession of the disputed land for forty or fifty years, and Glenn Weber has been in possession for years. To his knowledge, no one has gone on that property without Weber's permission because Weber is protective of his property. He stated that Weber has not allowed anyone on that property without permission for forty or fifty years. Regarding the fence, he explained that "Weber's cross fence goes all the way to the bluff.

And then Glenn's starts and ours starts on the left side." He also said there are old roads on the property including an old road to Crawford.

Travis Dechaume lives in the Crawford area and has known Weber all his life. He testified that Albert and Glenn Weber have been in exclusive possession of the disputed area for the last fifty consecutive years and have run cattle on the property the entire time. In the last ten years Dechaume worked on the disputed acreage "at least twice a week on the average of a year." He stated that he did not see anyone else using that property until he saw the Parkers on it. He testified that there is a fence around Weber's entire property, and the twenty acres is part of that fenced in area. He described it as continuously fenced, with no breaks. He explained that the fence goes up to the bluff. Although it does not connect to another fence, there is no access between the bluff and the fence.

Jay Parker testified that he purchased the disputed area from Taylor for about $100 and explained that Taylor would not warrant that land because he was afraid of getting in a dispute. While he was aware of "some dispute," he denied knowing Weber claimed to own the property before he purchased it. He testified that, when researching he learned that, in the 1960's, permission was given to Glenn's father to run cattle on the property. He offered an exhibit purportedly signed by Albert Weber on June 17, 1960 stating "I hereby agree that any existing fences or any fences built in the future wholly or in part by me on or near the George Lynn Estate shall not affect the surveyed and recorded property lines of said Estate."

Parker denied that the existing fence is enclosed, stating that "you can go around the fence at the bluff." Further, there is a thirty to forty-foot gap between the fence and the creek. He admitted that the fence prevented cattle from getting on the bluff and that if the fence was in the creek, it would get washed out. Parker admitted seeing a cow through a motion activated camera he set up to monitor the property. He explained that the disputed area is fenced off from the 102 acres, his 102 acres is completely fenced, and Weber's cows cannot get on it. Parker explained that a walk-in horse gate is shared on his and Weber's property and allows egress and ingress to the disputed area. He testified that the gate was dilapidated so he rebuilt it. Parker clarified that the old road running across the disputed area is not maintained, characterizing it as a trail.

Christopher Wayne Weber, Glenn Weber's thirty-year-old son, testified that the disputed area is inclusive of their perimeter fence, which has been in place his entire lifetime. He explained that the majority of the fencing on his family's land was completed in the mid-1960's, and he maintains the fences daily. He does brush removal and control to keep it clean and efficient for their cattle operation. On the disputed area, he has done "[l]ots of fencing work" and "lots of brush clearing." The fence between the disputed area and Parker's 102 acres is a quarter, or half mile long. There is no cross-fencing on any of their property. It is just one tract, and the cattle roam at large on all of it, including the disputed area. He explained that the average stocking ratio for land of that nature is approximately ten acres per cow so they would have about sixty cows. He testified that,

"[w]e have the obvious thoroughfare through that property, we own the land to the East and West." There is a small "pasture gate" on the adjoining fence on the east line of their property.

Christopher stated that they have built roads through the disputed property. He explained that there is a road that follows along down the creek bottom, running the entire length of the disputed property, going east-west. Another road that was constructed fifteen or twenty years ago for Glenn Weber by Eugene Dechaume, comes off the south bluff to gain access to the creek bottom. He explained that there is a shear sixty-foot bluff face.

Christopher also testified that he uses the land for other purposes including hunting, casual enjoyment, family time, looking for arrowheads, just getting away, and enjoying nature. He and his father have also spent a lot of time roaming the lands on horses. He testified that no one is allowed to use the disputed area other than family without Glenn's permission. He has worked the ranch on a daily basis since he graduated from high school and in that time he has never seen anyone on it until after Parker purchased the 102 acres. He also stated that in his entire lifetime, until Parker began coming onto the property, he and his family occupied and used this land peaceably without any "fusses" with anyone. He testified that they occupied it openly, everyone knows Weber uses and occupies the land, and they never had to run people off the property.

Glenn Weber testified that in 1958 he bought 560.9 acres. He bought "everything under fence," and the disputed area, which he described as a cow pasture, was under fence. He testified that he has used the land exclusively since 1959, his ownership is not a secret, and he has used it openly. Other than the Lacy lawsuit, he never had an issue with anyone about ownership. He never saw Lacy or Taylor on the property. Other than Parker, no one has been on the land without his permission. He denied knowing anything about an agreement made by his father to graze cattle on George Lynn's land. When asked if he or his dad ever revoked the permission they were allegedly given, he indicated that they had not.

Weber explained that the existing road is the old public road to Crawford, which was built in 1903, and runs along the fence separating the disputed area from Parker's 102 acres. The road went "across the creek and hit Morgan Road." He said the existing road and the fence have always been there. Also, Mr. Dechaume built a road off the bluff. He testified that he built a new fence "around the whole thing." He explained that on the disputed area it was not possible to dig a post hole. He hired someone with an air drill to bore holes in the rock, and Weber put iron posts in the holes. He explained the horse gate is on the fence that runs to the very south, not in the disputed area. It is for the purpose of moving cattle. He testified that he put two no trespassing signs on the fence a year after he built the new fence on the disputed property.

John Laufenberg testified that he has lived in Crawford all his life, and his south fence borders Weber's north fence. He stated that the Weber property has one perimeter fence and Weber has claimed to own the property exclusively since the 1960's. Other than Lacy, he does not know of anyone who claimed to own a piece of this property. He testified that it is common knowledge that Weber openly claims ownership.

**Exclusive Possession**

In their fourth issue, the Parkers contend the evidence does not show Weber used the property exclusively. They argue that the testimony by witnesses stating that Weber exclusively used the land was conclusory and no evidence. They also argue that they used the land, therefore Weber's possession was not exclusive.

A lay witness may testify in the form of an opinion provided it is rationally based on the witness's perception and helpful to clearly understanding the witness's testimony or to determining a fact in issue. TEX. R. EVID. 701. Opinion testimony that is conclusory is not relevant evidence. *See Nat. Gas Pipeline Co. v. Justiss*, 397 S.W.3d 150, 156 (Tex. 2012). A conclusory statement is one that does not provide the underlying facts to support the statement. *Holloway v. Gideon Dekkers & Twin Lakes Golf Course, Inc.*, 380 S.W.3d 315, 323 (Tex. App.—Dallas 2012, no pet.). However, we disagree that Weber's evidence of his exclusive possession of the property is conclusory.

Glenn Weber testified from his own personal knowledge that he used the land openly and exclusively since 1959. Other than Parker, no one has been on the land

without his permission. Christopher Weber testified that in his entire thirty-year lifetime, his family occupied the land openly and no one can be on the land without his father's permission. In the twelve years before trial, he never saw anyone on it except Parker. Mattlage testified that no one has gone on that property without permission because Weber is protective of his property. He grew up next door, and the trial court could rationally infer that this statement was based on personal knowledge. Dechaume has known Weber all his life and worked on the disputed property weekly for years. His statement that he had not seen anyone on the property before Parker started using it is based on personal knowledge. The witnesses' statements are statements of fact based on personal knowledge and they provide legally and factually sufficient evidence that Weber exclusively used the property. *See* TEX. R. EVID. 701; *Mixon v. Clark*, 518 S.W.2d 402, 404 (Tex. Civ. App.—Tyler 1974, writ ref'd n.r.e.) (Witnesses who had lived on or near the property at issue and were familiar with the land testified that the fence line had always been recognized as the boundary line and they had never heard of anyone claiming the disputed property until the appellant asserted a claim.).

The Parkers also argue that Weber was not in exclusive possession because they and their family used the disputed land. The trial court found that Weber held the property in peaceful and adverse possession at least since May 12, 1987. Therefore, the twenty-five-year limitations period ended, and Weber's limitations title vested, in 2012. *See Republic Nat'l Bank v. Stetson*, 390 S.W.2d 257, 260 (Tex. 1965) (holding that a limitation

title once consummated is as full and absolute as any other perfect title). The Parkers claim ownership based on a 2014 deed and were present on the property after Weber secured title by limitations. Evidence of the Parkers' entry onto the land is irrelevant as to the issue of Weber's exclusive possession during the limitations period.

The Parkers also argue that Weber could not have adversely possessed the disputed property because he did not pay taxes on it. We disagree. Standing alone, the failure to pay taxes has no probative force. *See Garcia v. Palacios*, 667 S.W.2d 225, 229-30 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). We overrule issue four.

**Characterization of the Fence**

In their fifth issue, the Parkers contend that the trial court erred in finding that the fence is a designed enclosure, that Weber substantially modified the fence, and that he always maintained the fence. They argue that the fence separating the disputed property from their 102 acres is merely a casual fence and therefore insufficient to establish title by adverse possession. In their sixth issue, they assert the trial court erred in finding Weber constantly used the land for grazing and made active and total use of the pasture grazing capacity to the exclusion of all others. In their ninth issue, the Parkers contend the trial court erred in finding that the general reputation in the community is that the land is part of Weber's ranch and the fence is the boundary between the Parkers' property and Weber's property.

The evidence shows that the fence dividing the disputed property from the 102 acres has been in existence since at least 1903. There was no evidence of the reason the fence was originally built. Thus, there is a presumption that the fence is a "casual fence." *See Rhodes*, 802 S.W.2d at 646. However, Weber has shown that the fence is not a casual fence even without proof of the fence's origin and reason for existence. *See Butler*, 455 S.W.2d at 945-46.

Christopher Weber testified that he is a full-time cattle rancher. Glenn Weber stated that he "run goats and cattle" on the property. Mattlage testified that the Webers "run lots of cattle." Dechaume said the Webers have run cattle on the property for the last fifty consecutive years. Another neighbor, John Laufenberg, said the Webers run cattle. Christopher Weber explained that, due to the nature of the land, it can only support one cow per ten acres, thus they only have about sixty cows at a time. Those cows have the freedom to roam on all of their acreage, including the disputed area, which is contiguous to the almost 561 acres to which Weber holds record title. Thus, there is evidence that the Webers consistently use the land for grazing cattle. Testimony that the nature of the land determines the number of cows owned, and the number of acres over which those cows are spread, leads to the reasonable inference that there may not be cows on the disputed land all the time. *See City of Keller*, 168 S.W.3d at 821. We disagree with the Parkers' characterization of the evidence of grazing of cattle as "minimal."

Additional factors considered in *Butler* are present here, as well. The disputed area is fenced within Weber's record title land, and the tracts are operated as one unit. Weber rebuilt the entire perimeter fence, including the fence dividing the disputed property and the 102 acres. Due to the rocky terrain in the disputed area, he had to hire someone to use an air drill to bore holes in the rock. He then put iron posts in the holes. Further, Christopher maintains the fences daily.

Finally, as in *Butler*, witnesses testified as to the general reputation in the community regarding ownership. Mattlage testified that the Webers have been in exclusive possession of the disputed area for forty or fifty years. To his knowledge, no one has gone on that property without Weber's permission during that time period. Dechaume testified that the Webers have been in exclusive possession of the land for the last fifty consecutive years. Laufenberg testified that he always considered that area part of the Webers' place. He explained that Weber has openly claimed to own the property exclusively since the 1960's, noting that it is common knowledge.

The importance of the fence to Weber's claims of adverse possession is ultimately a question for the trier of fact, and we are mindful of our duty to defer to the fact finder in its determination of such issues. *See Rhodes*, 802 S.W.2d at 646. Here, considering the evidence in the light most favorable to the verdict, we determine the evidence shows the fence at issue is not a casual fence. The disputed tract is contiguous with Weber's record title land and they are operated as one unit. Weber has shown active, continuous, and

total use of the pasture grazing capacity to the exclusion of all others for decades. Weber made the fence his own by rebuilding and maintaining it. Finally, the record includes testimony from long-time neighbors that the general reputation in the community is that Weber owns the disputed property. Under these circumstances, although the fence is not a casual fence, Weber is not required to show that he "designedly enclosed" the disputed property. *See Butler*, 455 S.W.2d at 945-46; *Perkins v. McGehee*, 133 S.W.3d 287, 292-93 (Tex. App.—Fort Worth 2004, no pet.).

Parker contends the fence was not enclosed or attached to the fence around the entirety of Weber's property. Weber testified that he built a fence around the entire perimeter of his land, including the disputed area. Dechaume testified that there is a fence around Weber's entire property, including the disputed area. He described it as continuously fenced, with no breaks. He said there is no access between the fence and the bluff. Parker testified that the fence prevented cattle from getting on the bluff but stated there is a thirty to forty-foot gap between the fence and the creek. No testimony addressed how that gap affected Weber's ability to keep his cattle enclosed. It was for the trial court to resolve inconsistencies or conflicts among the witnesses' testimony. *See Ford*, 252 S.W.2d at 563. The trial court determined the entire area was enclosed. *See Dunn v. Taylor*, 113 S.W. 265, 268 (Tex. 1908) (holding that the mere fact that the river was not a perfect barrier against stock would not be conclusive against the claim of the possessor).

We conclude that the evidence is legally and factually sufficient to support the trial court finding that the property is fenced with a designed enclosure. *See Hagar Clothing Co.*, 164 S.W.3d at 388; *Cain*, 709 S.W.2d at 176.

In its finding of fact eight, the trial court stated that the property is fenced with a designed enclosure not a casual fence and that Weber substantially modified the perimeter fence. Under case law, a claimant may, as here, show the preexisting fence is designedly enclosed, or he may change the character of the fence so it becomes a designed enclosure. *See Rhodes*, 802 S.W.2d at 646; *Butler*, 455 S.W.2d at 945-46. The finding that the fence is a designed enclosure is supported by the evidence. Therefore, the finding that Weber substantially modified the fence is irrelevant. When findings are irrelevant or superfluous to the trial court's judgment, we consider whether the finding caused harm. *See* TEX. R. APP. P. 44.1(a). Here, the Parkers have not shown that any error committed by the trial court in making an irrelevant finding either probably caused the rendition of an improper judgment or prevented them from properly presenting their case on appeal. *See Merry Homes v. Luu*, 312 S.W.3d 938, 950-51 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

The evidence supports the trial court's findings that the fence is a designed enclosure, Weber used the land for grazing to an extent satisfying the requirements of adverse possession, and the general reputation in the community is that the disputed area

is a part of Weber's ranch.  *See Haggar Clothing Co.*, 164 S.W.3d at 388; *Cain*, 709 S.W.2d at 176.  We overrule issues five, six and, nine.

**Notice**

In their third issue, the Parkers assert the trial court erred in finding Weber adversely possessed the property for twenty-five years and used the property in such a way to reasonably notify them of a hostile claim.  The character of use required to establish adverse possession varies with the nature of the land and its adaptability to a particular use.  *Vaughan v. Anderson*, 495 S.W.2d 327, 332 (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.).  The existence of a designed enclosure coupled with continuous use for grazing purposes for the statutory period gives sufficient notice of a hostile claim to support a claim for adverse possession.  *See Butler*, 455 S.W.2d at 945-46.  As explained above, the fence is a designed enclosure, the land was best suited for grazing cattle, and Weber used the land for grazing cattle for decades.  We overrule issue three.

**Adverse Possession**

In their first issue, the Parkers contend the court erred in its findings, conclusions, and judgment because Weber did not comply with the statutory requirements to meet adverse possession because there was no evidence, or in the alternative, insufficient evidence to support those findings and conclusions and to render judgment thereon.  To be successful, Weber had to prove an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile

to the claim of another person for twenty-five years. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021(1), 16.027. As explained above, Weber was in exclusive possession of the disputed property since 1959. The fence on the property is a designed enclosure and Weber grazed cattle on the property consistently for the entire time he possessed it. Furthermore, the reputation in the community is that Weber owned the property since the 1960's. We conclude that Weber established by legally and factually sufficient evidence that he adversely possessed the disputed tract of land for a period of at least twenty-five years. *See Butler*, 455 S.W.2d at 945-46. We overrule the Parkers' first issue.

**Non-Grazing Use**

In their seventh issue, the Parkers contend the trial court erred in its finding of fact twelve as to other alleged uses of the property by Weber, asserting that the evidence is legally and factually insufficient to support the finding. Finding of fact twelve states: "During the twenty-five years during which Plaintiff held the land, he also made non-grazing use of the land, including construction and maintenance of roads, such that the record title holder had notice of the hostile claim." Because the trial court's determination that Weber proved his claim for adverse possession can be upheld based on other findings, this finding is irrelevant. The Parkers have not shown that it either probably caused the rendition of an improper judgment or prevented them from properly presenting their case on appeal. *See Merry Homes*, 312 S.W.3d at 950-51. We overrule issue seven.

**Permissive Use**

In their eighth issue, the Parkers assert that one of their predecessors in interest gave permission to Weber's father, and predecessor in interest, to run cattle on the disputed property, that use has not changed, and there has been no repudiation of that permission. Therefore, they argue, they did not have notice of the hostile claim.

If a person who claims title to property by adverse possession entered the property with the title holder's permission, that person must have acted in a manner that repudiated a permissive relationship with the titleholder. *Tex-Wis Co. v. Johnson*, 534 S.W.2d 895, 899 (Tex. 1976). Assuming such permission was proven at trial, it would be irrelevant here. Whether Albert had permission to use the land would be relevant if Glenn was relying on Albert's claim to the land to satisfy the full limitations period. *See Boyle v. Burk*, 749 S.W.2d 264, 266 (Tex. App.—Fort Worth 1988, writ denied) (If there is privity of estate between parties holding adversely possessed property, the party claiming adverse possession may add, or tack, the successive interests together to establish possession for the requisite statutory period.). But, here, Glenn need only rely on his own lengthy adverse possession to satisfy the limitation period. We overrule the Parkers' eighth issue.

**Trespass**

In their second issue, the Parkers contend the evidence is legally and factually insufficient to support the trial court's finding that they trespassed on the disputed

property.  Rule 38.1(i) of the Texas Rules of Appellate Procedure requires an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."  TEX. R. APP. P. 38.1(i).  The failure to offer argument, citations to the record, or citations to authority waives the issue on appeal.  *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  Appellate courts must construe briefing requirements reasonably and liberally, but a party asserting error on appeal still must put forth some specific argument and analysis showing that the record and the law support its contentions.  *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Here, the Parkers listed this issue in their list of nine issues at the front of their brief.  But the body of the brief contains no reference to trespass at all.  In their reply brief, they admitted that they did not provide briefing on this issue.  Without argument or citations to the record or authority, this issue is waived.  *Id*.  We overrule the Parkers' second issue.

## Conclusion

Weber established by legally and factually sufficient evidence that he adversely possessed the disputed property for at least twenty-five years.  Therefore, we affirm the trial court's judgment.

STEVE SMITH
Justice

Before Justice Johnson,
     Justice Smith,
     and Justice Davis[2]
Justice Johnson concurring
Affirmed
Opinion delivered and filed April 5, 2023
[CV06]



---

[2] The Honorable Rex Davis, Retired, Former Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.