Elisha RHODES, et al., Petitioners,

v.

Marjorie CAHILL, Respondent.

No. C-9064.

Supreme Court of Texas.

Oct. 10, 1990.

W.R. Stump, Georgetown, for petitioners.

John W. Stayton, Jr., D.L. Hughes, Austin, for respondent.

## OPINION ON MOTION FOR REHEARING

PHILLIPS, Chief Justice.

The Respondent's motion for rehearing is overruled. Our opinion of July 3, 1990, however, is withdrawn, and the following is substituted in its place.

This adverse possession case presents the issue of whether the adverse possession claimant, Respondent Marjorie Cahill, has proven each element of adverse possession as a matter of law. We hold that she has not. For reasons that follow, we reverse the judgment of the court of appeals and remand the cause to that court for further proceedings.

### FACTS

In 1933, L.C. Cahill purchased from M.W. Rutledge a 177–acre tract of land ("the Cahill tract"). Adjoining the Cahill tract were five tracts of cedar trees, covering 15.332 acres, which were owned by Elisha Rhodes ("the cedar tracts"). At the time of Cahill's purchase, an old fence enclosed both the Cahill tract and the cedar tracts. No interior fence or other visible boundary separated the Cahill tract from the cedar tracts.

L.C. Cahill married Marjorie Cahill in 1943. They lived on the Cahill tract until his death in 1975, whereupon his interest passed by will to Marjorie. The Cahills used their property and the cedar tracts for grazing cattle and goats. They cleared cedar trees and brush from the land for this purpose, but the cedar tracts were never cultivated or improved in any other way. Mr. Cahill posted "No Trespassing" signs at various points on the fence surrounding his property, but there is no evidence that such signs were actually placed on that part of the fence enclosing the cedar tracts. It was stipulated that the Cahills paid property taxes on about 200 acres of land for the years 1956 to 1979.

Shortly after Mr. Cahill's death, Marjorie Cahill learned that a church might be built on one of the five cedar tracts. Mrs. Cahill thereupon filed an affidavit of limitation in the deed records of Williamson County, Texas. When a buyer offered to purchase both the Cahill tract and the five cedar tracts in 1980, Mrs. Cahill brought suit against various known and unknown defendants to establish title to the 15.332 acres by adverse possession.

As a result of citation by publication, many persons came into court, employed their own attorney and proved they were heirs or descendants of Elisha Rhodes.[1] The trial court appointed an attorney ad litem to represent the remainder of the defendants cited by publication. By agreement of all parties, the trial court appointed a receiver who sold all five tracts. The proceeds of the sale were placed on deposit in the registry of the court.

Following a non-jury trial, the trial court found Mrs. Cahill to be the record owner of one cedar tract and awarded her a part of the sale proceeds, rendered judgment that she take nothing as to her adverse possession claims to the other four cedar tracts, and ordered the remainder of the proceeds distributed among the known and unknown heirs of Elisha Rhodes. The trial court ordered that the attorney ad litem's fees be paid from the shares of the proceeds awarded to the unknown defendants. In an unpublished opinion, the court of appeals, holding that Mrs. Cahill established title by adverse possession as to all five tracts as a matter of law, reversed and rendered judgment in her favor. The court also taxed the costs of appeal against all appellees, including those unknown defendants cited by publication. On rehearing,

---

1. Alma Jenkins Faught, Lois Jenkins Hood, Thelma Jenkins Kanetzy, Wilburn H. Jenkins, Herma Jenkins Ford, Thomas G. Jenkins, Julia Dean Jenkins Price, Shirley Jenkins Montgomery, Edith June Jenkins Robinson, Jimmy Jenkins, Pat J. Ballard, Ruth Cox, Joyce Jenkins Manning, Ruth J. Murphy, Robbin Jenkins, Kathy McWright Dannar and Barbara McWright Donel, filed an answer to Mrs. Cahill's Original Petition. They alleged that Mrs. Cahill had failed to satisfy the requirements of adverse possession, that they were the heirs of Elisha Rhodes and therefore were the record owners of the cedar tracts in question and that they should be granted title and possession of the property, as well as an easement of ingress and egress across the land owned by Marjorie Cahill.

the attorney ad litem representing these unknown defendants complained of the court of appeals' failure to assess his fees as costs of appeal to be paid by Mrs. Cahill as the successful plaintiff who utilized service by citation. In its opinion on motion for rehearing, also unpublished, the court of appeals held that good cause had not been shown justifying an award of costs other than to Mrs. Cahill.

## ADVERSE POSSESSION

Adverse possession is statutorily defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX.CIV.PRAC. & REM.CODE ANN. § 16.021 (Vernon 1986). More than a century ago, we outlined the various elements to be proved by a claimant seeking prescriptive title through adverse possession in *Satterwhite v. Rosser,* 61 Tex. 166 (1884):

> It is well settled, that, where a party relies upon naked possession alone as the foundation for his adverse claim, it must be such an actual occupancy as the law recognizes as sufficient, if persisted in for a long enough period of time, to cut off the true owner's right of recovery.
>
> It has been said that such possession must not only be actual, but also visible, continuous, notorious, distinct, hostile (i.e., adverse), and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.

*Id.* at 171; *see also Heard v. State,* 146 Tex. 139, 146, 204 S.W.2d 344, 347–48 (1947).

■ One seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence.[2] *Ramirez v. Wood,* 577 S.W.2d 278, 287 (Tex.Civ.App.—Corpus Christi 1978, no writ). In granting judgment for

defendants, the trial judge found that Marjorie Cahill failed to prove each element of adverse possession. *Cf. City of Beaumont v. Graham,* 441 S.W.2d 829, 835 (Tex.1969). By reversing and rendering judgment for plaintiff as a matter of law, the court of appeals held that she did establish her case as to each element. We disagree.

■ One essential element of adverse possession under the ten-year limitation statute is that the claimant's possession must be an actual and visible appropriation of the land for ten or more consecutive years. TEX.CIV.PRAC. & REM.CODE ANN. §§ 16.021, 16.026 (Vernon 1986). Although the Cahills lived continuously on their 177–acre tract for much longer than the statutory ten-year period, their use of the cedar tracts must constitute an actual and visible appropriation of the land such that the true owner is given notice of a hostile claim. *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 287–89, 267 S.W.2d 781, 785–87 (1954). "[T]he possession must be of such character as to indicate *unmistakably* an assertion of a claim of *exclusive* ownership in the occupant." *Rick v. Grubbs,* 147 Tex. 267, 270, 214 S.W.2d 925, 927 (1948) (emphasis in original); *see also, McDonnold v. Weinacht,* 465 S.W.2d 136, 141 (Tex.1971). Mrs. Cahill claims to have provided such evidence with her testimony that her husband had cleared and sold cedar trees from the land. However, she could not verify whether those trees were removed from the Cahill tract or the cedar tracts. Even if she did establish that the trees were from the contested area, neither one isolated commercial sale of cedar nor selective clearing for grazing purposes is sufficient to show adverse possession over a ten-year period as a matter of law.

■ The parties' stipulation that the Cahills paid property taxes on approximately 200 acres of land from 1956 through 1979 is also insufficient to demonstrate actual

---

2. Some decisions, including some from this court, have indicated that the proof must be "clear and satisfactory." *See, e.g., Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 290, 267 S.W.2d 781, 787 (1954). As we have previously observed this is but an admonition to exercise great caution in weighing the evidence and does not supplant the usual standard of proof by a preponderance of the evidence. *Sanders v. Harder,* 148 Tex. 593, 598–99, 227 S.W.2d 206, 209 (1950).

and visible appropriation of the land as a matter of law. A stipulation is a contract between the parties, and it is subject to judicial interpretation like any other contract. *See, e.g., Fourticq v. Fireman's Fund Ins. Co.,* 679 S.W.2d 562, 566 (Tex. App.—Dallas 1984, no writ); *Peat, Marwick, Mitchell & Co. v. Sharp,* 585 S.W.2d 905, 909 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.). The oral stipulation in this case does not expressly state that the Cahills paid taxes on the cedar tracts. Considering the context in which it was made, however, the stipulation fairly provides that the Cahills paid taxes on all the land enclosed by the fence, including the cedar tracts. Nonetheless, while payment of these taxes is competent evidence of adverse possession, it is insufficient to establish adverse possession as a matter of law under the ten year statute. *See generally McBurney v. Knox,* 259 S.W. 667, 674 (Tex. Civ.App.—Beaumont 1924), *aff'd,* 273 S.W. 819 (Tex. Comm'n App.1925, judgmt adopted); *Spearman v. Rodden & Lawrence,* 244 S.W. 622, 623 (Tex.Civ.App.—Texarkana 1922, no writ).

■ Finally, Mrs. Cahill testified that she and her husband grazed cattle and goats on the cedar tracts. This evidence is insufficient to establish title by adverse possession unless the cedar tracts were designedly enclosed for the Cahill's use. *McDonnold v. Weinacht,* 465 S.W.2d at 142; *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. at 287, 267 S.W.2d at 785. Although it is unknown who erected it, the evidence suggests that the fencing which bordered two sides of the cedar tracts was standing when Mr. Cahill purchased the property. The evidence indicates that Mr. Cahill occasionally repaired the fence, added net wire and additional barbed wire to it, and replaced some of the fence posts.

■ Under the applicable case law, there are two kinds of fences: "casual fences" and fences that "designedly enclose" an area. If the fence existed before the claimant took possession of the land

and the claimant fails to demonstrate the purpose for which it was erected, then the fence is a "casual fence." *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. at 288–89, 267 S.W.2d at 786. Repairing or maintaining a casual fence, even for the express purpose of keeping the claimant's animals within the enclosed area, generally does not change a casual fence into a designed enclosure. *McDonnold v. Weinacht,* 465 S.W.2d at 142–43. A claimant may so change the character of a casual fence that it becomes a designed enclosure, and evidence of such a substantial modification is sufficient to support a jury finding of adverse possession. *Butler v. Hanson,* 432 S.W.2d 559 (Tex.Civ.App.—El Paso), *aff'd,* 455 S.W.2d 942 (Tex.1970). However, we have neither been cited to nor found a case that establishes whether or when modification requires a finding of adverse possession as a matter of law.

We conclude that the record before us does not establish as a matter of law that the fence surrounding the cedar tracts was a designed enclosure rather than a casual fence. Considering all of the evidence, we hold that Mrs. Cahill did not conclusively establish title to the land. As we recently stated, "the question of adverse possession normally is a question of fact, so only in rare instances is a court justified in holding that adverse possession has been established as a matter of law." *Bywaters v. Gannon,* 686 S.W.2d 593, 595 (Tex.1985); *see also Pearson v. Doherty,* 143 Tex. 64, 71, 183 S.W.2d 453, 456 (1944). We therefore reverse the judgment of the court of appeals and remand the cause to that court for a consideration of Mrs. Cahill's factual sufficiency points.

### AD LITEM

■ In remanding this cause to the court of appeals, we note our disapproval of the court's refusal to award the attorney ad litem his fees. The court of appeals awarded the costs of appeal to Mrs. Cahill alone, citing Rule 89 of the Texas Rules of Appellate Procedure.[3] All costs of the appeal were taxed against the appellees, including

---

3. Rule 89 provides:

> In any civil cause reversed by the court of appeals, the appellant shall be entitled to an

those unknown defendants cited by publication. The court refused to award ad litem fees from the deposit in the registry of the court, which the attorney ad litem argues is contrary to Rule 244 of the Texas Rules of Civil Procedure.[4]

An attorney ad litem cannot as a practical matter recover his fees from his unknown clients. Our rules of civil and appellate practice therefore should be read to provide a reasonable fee and source of payment for the necessary efforts of an attorney ad litem. Under the court of appeals' analysis, appointed attorneys representing unknown parties would serve without compensation unless they were successful on appeal. Forcing attorneys to accept court appointment for a contingent representation, would surely frustrate the effective representation of unknown parties. On the other hand, sound policy considerations justify shifting the costs to the known parties. For example, a plaintiff utilizing service of citation by publication over unknown defendants cannot prosecute his or her lawsuit until the court appoints an attorney ad litem for the unknown parties. TEX.R.CIV.P. 244. Therefore "good cause" for assessing such costs against successful parties under Texas Rule of Civil Procedure 141 and Texas Rule of Appellate Procedure 89 is ordinarily shown in such circumstances.

For the reasons stated, we reverse the judgment of the court of appeals and remand the cause to that court for consideration of Mrs. Cahill's factual sufficiency points.

execution in the trial court against the appellee for costs occasioned by such appeal, including costs for the transcript and statement of facts. Nothing herein shall be construed to affect the present law with reference to the accrual and taxing of costs in tax suits, and nothing herein shall be construed to limit or impair the power of the court of appeals to otherwise tax the costs for good cause. TEX.R.APP.P. 89.

4. Rule 244 provides:
Where service has been made by publication, and no answer has been filed nor appearance entered within the prescribed time, the court shall appoint an attorney to defend the suit in behalf of the defendant, and judgment shall be rendered as in other cases; but, in every such case a statement of the evidence, approved and signed by the judge, shall be filed with the papers of the cause as part of the record thereof. *The court shall allow such attorney a reasonable fee for his services, to be taxed as part of the costs.* TEX.R.CIV.P. 244 (emphasis added).