

# IN THE
## TENTH COURT OF APPEALS

### No. 10-22-00275-CV

**RANDOLPH BEST, JR., GARY BEST, CHARLES BEST, ANITA BASSINGER AND LOUIS BASSINGER,**

**Appellants**

 **v.**

**MARY SUE THORNTON,**

**Appellee**

**From the 77th District Court**
**Freestone County, Texas**
**Trial Court No. CV20276**

## MEMORANDUM OPINION

In this suit to obtain title to land by adverse possession, Appellants, Randolph Best, Jr., Gary Best, Charles Best, Anita Bassinger, and Louis Bassinger, appeal from the trial court's judgment, rendered in favor of Mary Sue Thornton, Appellee. In three issues, Appellants contend the evidence is insufficient to support the judgment. We affirm.

## Background

In 1975, Randolph Best's grandmother deeded to him a one-third undivided interest in two contiguous tracts of land. The deed states that one tract contains 322 acres and the other contains 320 acres, for a total of 642 acres. The other four Appellants own the remaining two-thirds undivided interest. In 2020, in conjunction with the sale of the property, a survey was completed. The surveyor, using the metes and bounds description in Randolph Best's deed, determined that the two tracts of land contained a total of 599.82 acres. Randolph Best requested the surveyor to complete a second survey, this one using the existing fence line around the property instead of the metes and bounds description. The second survey revealed that there are 642 acres under fence.

Appellants brought suit against Thornton, record owner of the adjoining tract of land, contending they acquired title to the disputed forty-two acres based on the twenty-five-year adverse possession limitations period. Trial was before the court which found that Appellants have used the property openly and exclusively for grazing cattle and hunting leases for over fifty years. The court also found there is no evidence as to the reason for the original fence, who installed it, or when, and the only open and obvious use of the property was grazing cattle. Based on these findings, the court ruled that there was no adverse possession and rendered judgment in favor of Thornton.

**Adverse Possession**

In three issues, argued together, Appellants assert the evidence supports their adverse possession claim. Specifically, they contend that the court erred in finding that the only open and obvious use of the property was grazing cattle and that the property was only used by Appellants for grazing cattle and hunting leases because these findings were against the great weight and preponderance of the evidence; and the trial court erred in rendering judgment against Appellants because the "judgment was against the great weight and preponderance of the evidence." We interpret these issues as attacks on the factual sufficiency of the evidence to support the judgment.

STANDARD OF REVIEW

In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict. *Savoy v. Nat'l Collegiate Student Loan Tr. 2005-3*, 557 S.W.3d 825, 834 (Tex. App.—Houston [1st Dist.] 2018, no pet.). However, the trial court's findings of fact are not conclusive when a complete reporter's record appears in the appellate record. *Id*.

We review the factual sufficiency of the evidence used to support a trial court's findings of fact just as we would review a jury's findings. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 302 (Tex. App.-Houston [1st Dist.] 2009, no pet.). When considering a factual sufficiency challenge, we consider and weigh all of the evidence. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.

1986). An appellant attacking factual sufficiency with respect to an adverse finding on which he had the burden of proof must demonstrate that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool*, 715 S.W.2d at 635. We may not substitute our judgment for that of the trier of fact or pass on the credibility of the witnesses. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998).

We review the trial court's conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We review the trial court's legal conclusions drawn from the facts to determine whether the conclusions are correct. *Id*.

APPLICABLE LAW

The doctrine of adverse possession is based on statutes of limitation for the recovery of real property. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 16.021-.034. If statutory requisites are met, a person may claim title to real property presently titled in another and ultimately title to the property vests with the adverse claimant. *See id*. § 16.030(a). Adverse possession is defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person" throughout the statutory period. *Id*. § 16.021(1). Possession must be actual, visible, continuous, notorious, distinct, hostile, and of such

character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. *Harlow v. Giles*, 132 S.W.3d 641, 646 (Tex. App.—Eastland 2004, pet. denied). A tenant's occupancy of land can constitute the landlord's possession. *See King v. Inwood N. Assocs.*, 563 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1978, no writ).

Acts that may show actual and visible appropriation of real property include grazing cattle, building fences, and the occupation of land. *Mendoza v. Ramirez*, 336 S.W.3d 321, 328 (Tex. App.—El Paso 2010, pet. denied). Under applicable case law, fences are classified as either "casual fences" or fences that "designedly enclose" an area. *Rhodes v. Cahill*, 802 S.W.2d 643, 646 (Tex. 1990) (op. on reh'g). When the fence existed before the claimant took possession and the claimant failed to demonstrate the purpose for which the fence was erected, the fence is considered a "casual fence" and generally does not suffice to show adverse possession. *Id*.

The rule that a preexisting fence is a casual fence is a mere presumption, however, and may be rebutted if the claimant makes a sufficient showing that the fence "designedly enclosed" the tract claimed by adverse possession. *See Butler v. Hanson*, 455 S.W.2d 942, 945-46 (Tex. 1970); 16 William V. Dorsaneo III, *Texas Litigation Guide* § 250.02[3][c] (2023). The adverse claimant who relies upon grazing as evidence of his adverse use and enjoyment must usually show as part of his case that the land in dispute was "designedly enclosed" as opposed to "incidentally enclosed." *McDonnold v. Weinacht*, 465 S.W.2d 136, 141-42 (Tex. 1971). Additionally, an exception to the enclosure requirement exists if the

claimant can prove sufficient non-grazing use of the land such that the true owner would have notice of the hostile claim. *See Butler v. De La Cruz*, 812 S.W.2d 422, 424-25 (Tex. App.—San Antonio 1991, writ denied). The nature of the fencing and its importance as evidence of adverse possession is a question for the trier of fact. *See id.* at 424; *Ogletree v. Evans*, 248 S.W.2d 804, 807 (Tex. Civ. App.—Beaumont 1952, writ ref'd n.r.e.).

CHARACTERIZATION OF THE FENCE

The record shows that Appellants claimed land contiguous with their record title property and used it continuously for grazing cattle for more than twenty-five years. This case turns on whether the existing barbed-wire fence that Appellants claim as the boundary between their property and Thornton's property is a casual fence. There is no evidence showing who originally built the fence or why. There is no dispute that the fence has been in the same place for decades. Randolph Best testified to helping others, including Thornton's uncle and a Thornton family employee, repair the fence in 1963. They "shored up" the fence line, fixed broken wires and replaced missing wires. Carl Yates Bonner, who lived in the vicinity, explained in his 1990 affidavit that the property was fenced on all sides by a barbed-wire fence since at least 1965. Eugene Thurman, an employee of the Thornton family, in his 1979 affidavit, stated that there was a "substantial barbed-wire fence" on all sides except where a creek provides the boundary. [1] The fence

---

[1] The affidavits were obtained and filed in the county land records, in 1990 and 1979 respectively, to prove ownership of the land in connection with potential oil leases on the property.

was also repaired by Appellants' tenant, John Day, who leased the land for more than ten years beginning in 2008. He, along with an employee of Thornton's, put up new wire, put in some new posts, and tied it back together where necessary. He described the fence as having four wires in some places and five in other places, with teak and cedar posts.

The fence existed before Appellants took possession and they provided no explanation for the purpose for which it was built. Therefore, it is a classic casual fence. *See Rhodes*, 802 S.W.2d at 646.

**Designed Enclosure**

Appellants contend this case is controlled by *Butler v. Hanson* where the Supreme Court determined that the fence at issue was not a casual fence. *See Butler*, 455 S.W.2d at 945-46. In *Butler*, although there was no evidence showing who built the fence, the court explained that Hanson did not simply make use of an existing fence, he changed the character of the fence and made it his own by adding a net fence to the existing three-strand barbed wire. *Id*. Substantial modifications may change the character of a casual fence so that it becomes a designed enclosure. *See Rhodes*, 802 S.W.2d at 646.

Here, there is evidence that Appellants have repaired the fence, replacing wires and posts. Repairing or maintaining a casual fence generally does not change a casual fence into a designed one. *See McDonnold*, 465 S.W.2d at 142-43. Appellants did not modify or change the nature of the fence. *See Butler*, 455 S.W.2d at 945-46. Moreover, the evidence shows those repairs were a joint effort between Appellants and Thornton.

Working together with the record owner is not indicative of an adverse possessor attempting to make the fence his own to change it from casual to designed enclosure. Accordingly, unlike the Appellee in *Butler*, Appellants did not change the character of the fence to a designed enclosure.

**Acquiescence**

Appellants assert that Thornton knew where the fence was located but never complained about the fence encroaching onto her property. They appear to contend that the fact that Thornton shared responsibility for fence repairs signals a belief by Thornton, or acquiescence, that the fence was on the boundary line.

Thornton explained that she owns interests in 3500 acres. All the land at issue was owned by family members for generations. Randolph Best's great-grandfather and her grandmother were brother and sister. Thornton testified that, at one point, William Andrew Bonner owned all of this land and he put fences wherever he wanted them. One of her deeds references a deed naming William Andrew Bonner as grantor in an 1899 transaction.

She testified that she knows where the fences are located although some of the fences are so old, she does not know who put them there. She is aware that the location of the fences do not match the metes and bounds descriptions in deeds and surveys. She stated that the fences are not boundaries. Instead, she explained, the fences were placed to suit the fence builders. They are there to keep cattle in and hogs out. Some fences have

been moved from an existing location and rebuilt in a different location due to the terrain on the ground. A man who worked for the Thornton family, Charles Thurman, "worked on fences all the time, all the fences."

She explained that the disputed area is heavily wooded and the surveyor "found lots of fences in there and he just took that first one he came to." Thornton summed up her stance by explaining "the fences are all over and I don't call that fence encroaching. It's on my property." On cross-examination, she testified again that there were no disagreements about the location of the boundary lines because "[i]t was all family and you don't know exactly where the boundary is until it's surveyed by the metes and bounds but it was okay."

The trial court was entitled to find Thornton's explanation logical and credible. *See Ellis*, 971 S.W.2d at 407. Thornton explained that all of the land at issue was once owned by an ancestor and divided up among family members. She testified that the fence was never meant to mark the boundary between tracts but, rather, the fences were placed for other, specific reasons. *See Georgetown Builders, Inc. v. Heirs of Tanksley*, 498 S.W.2d 222, 224 (Tex. Civ. App.—Austin 1973, writ ref'd n.r.e.) (holding that, where a fence is placed somewhere other than on the true boundary as a matter of convenience, grazing does not constitute adverse possession). Thornton's testimony supports the trial court's finding that the fence is a casual fence. *See Rhodes*, 802 S.W.2d at 646.

**Additional Uses of the Property**

Appellants argue that they did not use the property exclusively for grazing and therefore, do not have to show they designedly enclosed the land at issue. *See Trevino v. Trevino*, 64 S.W.3d 166, 172 (Tex. App.—San Antonio 2001, no pet.) (held that building a pond, corrals, and small house, together with farming, were sufficient non-grazing uses giving notice of a hostile claim). Appellants rely on hunting leases, the existence of an oil field road, oil and gas leases, and drilling.

Appellants leased the property to a tenant who had the right to lease the property to hunters. The tenant indicated that he has leased to deer hunters, but he did not specify when or how often hunters occupied the land. Evidence of sporadic hunting is insufficient to establish a claim of adverse possession. *See Prewitt v. Norsworthy*, No. 09-15-00090-CV, 2016 Tex. App. LEXIS 11392, at *15 (Tex. App.—Beaumont October 20, 2016, no pet.) (mem. op.); *Vaughan v. Anderson*, 495 S.W.2d 327, 332 (Tex. Civ. App.—Texarkana 1973, writ ref'd n.r.e.) (held that evidence of sporadic, irregular, and occasional use of land does not satisfy the statutes).

Best testified that the oil field road weaves back and forth between Appellants' property and Thornton's property. Thornton testified that the road is not located within Appellants' fence line. The trial court was entitled to believe Thornton. *See Ellis*, 971 S.W.2d at 407. The record is unclear as to the exact location of the road and there is no evidence of any oil and gas lease identifying the land that is the subject of a lease. There

is no evidence showing when the oil field road was built or how often it is used. There is no evidence of oil wells on the disputed property. Accordingly, Appellants did not prove sufficient non-grazing use of the land to qualify for application of the exception to the enclosure requirement. *See De La Cruz*, 812 S.W.2d at 424.

TAXES

Appellants assert they and their predecessor in title paid taxes on the disputed property since around 1935. The payment of taxes is some evidence of adverse possession, but it is insufficient to establish adverse possession as a matter of law and it is not a visible appropriation of the property. *See Harlow*, 132 S.W.3d at 648-49.

**Conclusion**

The trial court's findings that Appellants have used the property for grazing cattle and hunting leases and that the only open and obvious use of the property was grazing cattle are not against the great weight and preponderance of the evidence. *See Pool*, 715 S.W.2d at 635. Contrary to Appellants' assertion, the trial court did not state in its final judgment that the property "was only used by Appellants for grazing cattle and hunting leases." The fence at issue is a casual fence which does not suffice to show adverse possession. *See Rhodes*, 802 S.W.2d at 646. Further, the evidence does not show sufficient non-grazing use of the land to warrant application of the exception to the enclosure requirement. *See Trevino*, 64 S.W.3d at 172; *De La Cruz*, 812 S.W.2d at 422.

Accordingly, the determination that Appellants did not establish the right to the property by adverse possession is not against the great weight and preponderance of the evidence. *See Francis*, 46 S.W.3d at 241. We overrule Appellants' first, second, and third issues.

We affirm the trial court's judgment.

STEVE SMITH
Justice

Before Justice Johnson,
        Justice Smith, and
        Justice Davis[2]
Affirmed
Opinion delivered and filed August 30, 2023
[CV06]



---

[2] The Honorable Rex Davis, Senior Justice (Retired) of the Waco Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.