

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00020-CV

Maria V. **BARBOSA**,
Appellant

v.

Cristina **GALAN**,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 16-10-0898-CVA
Honorable John D. Gabriel Jr., Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:       Beth Watkins, Justice
               Liza A. Rodriguez, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: March 6, 2024

AFFIRMED

This appeal concerns a real property dispute between appellant Maria Barbosa and appellee Cristina Galan. In three issues, Barbosa challenges the sufficiency of the evidence for (1) adverse possession, applicable under the three-, five-, and ten-year limitations statutes; (2) payment of taxes under the five-year limitations statute; and (3) color of title under the three-year limitations statute. We affirm.

**BACKGROUND**

The origins of this title dispute rest in a family quarrel culminating in Barbosa suing to evict her niece, Galan, and Galan asserting ownership through adverse possession. Crispin and Sista Vejara originally owned approximately 26.75 acres in Atascosa County, Texas.[1] Crispin and Sista had five children. On March 16, 1998, Crispin and Sista conveyed 1.098 acres to their son, Louis Vejara (yellow—Plat 2). On May 4, 1998, Crispin and Sista conveyed the remainder of the property to three of their children—Julia Martinez, Celzo Vejara, and Barbosa. On April 27, 2001, Julia, Celzo, and Barbosa partitioned the property such that (1) Barbosa owned the east 8.6 acres north of F.M. Highway 3175 (red); (2) Julia owned the west 8.6 acres north of the highway (blue); and (3) Celzo owned 3.65 acres south of the highway (green).



Plat 1

Crispin and Sista did not convey property by deed to their fifth child, Antonia Duran, although she lived on a portion of the property at the time of the conveyances. Antonia is Galan's mother. After Crispin and Sista died, in 2005, Barbosa sought to evict Antonia and Galan, both of whom had lived on the property for many years. In response to the eviction proceeding, Antonia filed suit in April 2005 to set aside the conveyances to her siblings, alleging her parents lacked requisite mental capacity to execute the deeds and for adverse possession. The parties to the 2005 suit eventually

---

[1] For illustration purposes, we highlight identified tracts in colors stated in the opinion on admitted plats.

participated in a mediation that resulted in a December 19, 2005 settlement agreement. Among other terms, the settlement agreement stated: "[Antonia] to receive judgment satisfying title of [Antonia's] present use of real property including improvements as generally defined (roughly) as 7537 FM 3175, Somerset, Texas, & consisting of the area defined as attached Exhibit A [a hand drawing showing agreed boundaries]." The settlement agreement required Antonia to establish new access to the property from the highway and not use the dirt road providing existing access and to acquire a new survey at Antonia's cost and expense. Although Antonia constructed a new entry road and had the property surveyed, a judgment was not entered in her favor, and Barbosa did not execute a deed conveying property to Antonia. Notwithstanding the executed settlement agreement, on February 13, 2008, the lawsuit was dismissed for want of prosecution.

Antonia and Galan continued to live in their homes, and on February 14, 2008, Julia conveyed a 0.5-acre tract of land (the "Galan Tract") to Antonia. That same day, Antonia conveyed the Galan Tract (purple) to her daughter, Galan.

On May 5, 2016, a deed was filed in the real property records purportedly granting a 2.16-acre tract to Antonia. Only Julia executed the deed, although the 2.16-acre tract was situated on both Julia and Barbosa's tracts.



**Plat 2**

On May 10, 2016, Barbosa again filed to evict Galan from the Galan Tract; the case was dismissed after Galan raised title by limitations. In the trial court below, Galan thereafter asserted various causes of action, including to establish title to the Galan Tract by limitations (i.e., adverse possession). The trial court held a two-day bench trial, and on September 12, 2022, the trial court entered a final judgment in favor of Galan. This appeal follows.

## STANDARD OF REVIEW

As the party seeking relief, Galan bore the burden to prove each element of her cause of action by a preponderance of the evidence. *See Saba Zi Exploration, L.P. v. Vaughn*, 448 S.W.3d 123, 129 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("A party who asserts an affirmative claim for relief generally has the burden of persuading the factfinder as to each element of his cause of action.").

We only sustain a challenge to the legal sufficiency of the evidence in four circumstances: (1) where there is a complete absence of evidence of a vital fact; (2) where the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) where the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) where the evidence establishes conclusively the opposite of the vital fact. *Dallas Nat'l Ins. Co. v. De La Cruz*, 470 S.W.3d 56, 57 (Tex. 2015) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 812 (Tex. 2005)). We credit evidence that supports the judgment if a reasonable factfinder could have done so and disregard contrary evidence unless a reasonable factfinder could not have done so. *Id.*

## ADVERSE POSSESSION

In three issues, appellant asserts no evidence supports the trial court's judgment.

*Applicable Law*

Under Texas law, adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile

to the claim of another person." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011) (quoting TEX. CIV. PRAC. & REM. CODE § 16.021(1)). The adverse possession statutes are statutes of limitations intended to settle land titles. *Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 198–99 (Tex. 2003). As applicable here, Texas statutes authorize adverse possession under three-, five-, and ten-year limitations periods. TEX. CIV. PRAC. & REM. CODE §§ 16.024–.026.

To prevail on a claim of adverse possession, a claimant must establish (1) the actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) that involves continuous cultivation, use, or enjoyment throughout the statutory period. *NAC Tex Hotel Co., Inc. v. Greak*, 481 S.W.3d 327, 331–32 (Tex. App.—Tyler 2015, no pet.). A party seeking to establish title to land by virtue of the statute of limitations has the burden of proving every fact essential to that claim by a preponderance of the evidence. *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex.1990) (op. on reh'g).

To prevail under the five-year limitations period, a person "must bring suit not later than five years after the day the cause of action accrues to recover real property held in peaceable and adverse possession by another who: (1) cultivates, uses, or enjoys the property; (2) pays applicable taxes on the property; and (3) claims the property under a duly registered deed." TEX. CIV. PRAC. & REM. CODE § 16.025(a). At issue in this appeal related to the five-year limitations period is the requirement to pay applicable taxes on the property.

To prevail under the three-year limitations period, a person "must bring suit to recover real property held by another in peaceable and adverse possession under title or color of title not later than three years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.024. At issue in this appeal related to the three-year limitations period is the "color of title" requirement.

*Analysis*

### *Adverse Possession*

In her first issue, Barbosa asserts there is no evidence supporting Galan's claim that she adversely possessed the Galan Tract. Specifically, Barbosa asserts Galan's entry on the Galan Tract was made with consent and Galan's offer to purchase the property from Barbosa is inconsistent with a claim hostile to Barbosa's ownership. Although the briefing is unclear, we broadly construe Barbosa as challenging the sufficiency of the evidence pertinent to the requirements of an exclusive claim by Galan that is adverse and hostile to Barbosa.[2] TEX. CIV. PRAC. & REM. CODE § 16.021(1); *see also Greak*, 481 S.W.3d at 331–32.

At trial, Galan testified she had lived on the Galan Tract for twenty-six years. Barbosa testified she knew Galan was living on the property since 1996 or 1997. Galan admitted, without objection, photographs of her home on the Galan Tract. Barbosa testified that Galan's home was visible from her home to the north; agreed the structures on Galan's property were "open and obvious"; and admitted Galan's use was uninterrupted. In 2008, Galan purchased a new trailer home to move on the Galan Tract; at that time, an older trailer home that Galan had lived in was removed. Also in 2008, Galan purchased a water meter and installed a septic system. In 2011, Galan built a four-car garage on the property. Galan admitted into evidence an April 4, 2018 letter from CPS Energy verifying that Galan has maintained electric services at the address from May 24, 1996 through the date of the verification letter. A certified copy of the deed (filed February 15, 2008) purporting to convey the Galan Tract to Galan was likewise admitted without objection.

---

[2] Barbosa also asserts the ten-year statute is inapplicable because ten years did not pass between Galan's 2008 entry on the property and Barbosa's 2016 forcible detainer action. But because we determine there is sufficient evidence under the five-year statute, we need not address this argument applicable only to the ten-year statute.

With respect to Galan's offer to purchase the Galan Tract, Galan testified to a conversation with Barbosa regarding the Galan Tract. According to Galan, she offered to buy the property to purchase peace and avoid ongoing family disputes:

> **Q.**   Did you ever attempt to purchase that .5 acres [the Galan Tract]?
>
> **Galan.**   Yes, I did.
>
> **Q.**   Was that because she was disputing ownership to it, or when did that happen?
>
> **Galan.**   I don't know the year, but I did want to purchase the property. I don't -- I don't remember the year, but I did want to purchase the property from her, because I just wanted to be at -- you know, just be okay with everybody. With everything that was going on, I just wanted to purchase it and just go on with my life, so I did ask her if I -- if she could sell me the property.
>
> **Q.**   This was not part of the settlement negotiation, was it?
>
> **Galan.**   No.
>
> **Q.**   Okay. What did she tell you?
>
> **Galan.**   She said no.

Although it is unclear when this conversation occurred, Barbosa's counsel took the position at trial that these discussions were part of the 2005 lawsuit, and Barbosa swore she never had *any* communication with Galan regarding the sale of the Galan Tract. The trial court could have believed Galan's offer, if any, was made long before her claim under the five-year statute began to accrue in 2008. Because a reasonable factfinder could have disregarded this evidence as irrelevant to Galan's five-year limitations claim, we must disregard it as well. *See De La Cruz*, 470 S.W.3d at 57.

The trial court heard extensive testimony regarding the breakdown in familial relations between Barbosa, on the one hand, and Antonia and Galan, on the other hand. Given a prolonged

family dispute as early as 2005, the trial court could have inferred Galan's claim was adverse to, hostile to, and exclusive of Barbosa's claim. The trial court could have further inferred from the 2005 settlement agreement an understanding by the parties going forward that Galan's claim to the Galan Tract was hostile to and exclusive of Barbosa's claim.

After reviewing the evidence and applying the appropriate standard of review, we conclude the record contains sufficient evidence to establish each element of adverse possession at least as early as 2008. We accordingly overrule Barbosa's first issue.

### *Payment of Taxes*

In her second issue, Barbosa asserts there is no evidence Galan paid property taxes on the Galan Tract. Other than the requirements to prove adverse possession that we have already discussed, on appeal, Barbosa only challenges the payment of taxes under the five-year statute.

Barbosa asserts there is no evidence Galan paid taxes on the Galan Tract because, due to an error by the Atascosa Central Appraisal District ("CAD"), CAD erroneously deducted the Galan Tract from Julia's property rather than Barbosa's property. Notably, the Galan Tract is wholly located within Barbosa's 8.6-acre tract.

At trial, Sandy Goodrum testified CAD assessed Galan taxes on the Galan Tract from 2009 through 2021. That assessment was based on CAD's receipt of the February 2008 deeds conveying the Galan Tract (1) from Julia to Antonia, and (2) from Antonia to Galan. Goodrum explained that in 2008, CAD did not have mapping software to determine from which land the Galan Tract should be removed, and CAD assumed that because Julia was grantor, the Galan Tract was located within Julia's property. In 2020, CAD noticed the Galan Tract should have been carved out of Barbosa's property rather than Julia's property and, in 2021, CAD corrected their records. The effect of CAD's error is: (1) CAD undertaxed Julia as though the Galan Tract was located on it (when it was not); (2) CAD overtaxed Barbosa as though the Galan Tract were not located on it (when it

was); and (3) CAD taxed Galan on the Galan Tract. As confirmed by CAD records admitted at trial, for twelve years, CAD assessed Galan taxes on the Galan Tract as her homestead.

In her brief, Barbosa asserts she was not given notice of Galan's claim because she was assessed taxes for the full 8.6 acres over this twelve-year period. However, the five-year limitations statute does not require Barbosa be given notice of Galan's payment of taxes; nor does the statute provide a defense for overpayment of taxes. Textually, the statute requires only that Galan "pay[] applicable taxes on the property." TEX. CIV. PRAC. & REM. CODE § 16.025(a)(2). The evidence at trial conclusively established Galan was assessed and paid taxes on the Galan Tract from 2009 through 2021. We accordingly overrule Barbosa's second issue.

### Color of Title

In her third issue, Barbosa asserts there is insufficient evidence to establish color of title. Proof of "color of title" is only required under the three-year statute. Given our disposition of the first two issues—applicable to adverse possession under the five-year statute—we need not reach Barbosa's third issue. *See* TEX. R. APP. P. 47.1.

### CONCLUSION

Having found sufficient evidence of each challenged element under the five-year title by limitations statute, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice