Opinion issued April 16, 2026



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-25-00630-CV

———————————

**LARRY DEAN WHITE, Appellant**

**V.**

**LINDA JEAN WILLIS, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-87972**

---

## MEMORANDUM OPINION

This appeal concerns a real property dispute between pro se appellant Larry Dean White and pro se appellee Linda Jean Willis. White sued Willis for trespass to try title by adverse possession. Following a bench trial, the trial court ruled in Willis's favor and signed a judgment quieting title in Linda Jean Willis. On appeal,

White contends that this was error because he established all the elements of his claim. Because there was no evidence of one of the required elements of adverse possession, we affirm the trial court's judgment.

**Background**

In December 2024, Larry Dean White filed suit to quiet title asserting that he was the owner, by adverse possession, of a vacant lot at 9426 Rhode Island, in Houston, Texas. He alleged that he had been in continuous possession of the property from 1973 through December 2024. White maintained the lot and kept it clear of overgrowth and debris. In 2006, he recorded a lien for $20,000 for "upkeep, cleaning, cutting and maintenance" of Aron Mathews's property. In the lien, White wrote: "I Larry White Sr. would like to file a lien and 'Squatters Rights' against Matthew Aron [sic] for the upkeep of his property on 9426 Rhode Island." Three years later, a law firm, which represented Harris County and other taxing entities in the collection of delinquent property taxes, sent White a letter in which it said it was attempting to locate Joanna and Aron Mathews regarding the lot at 9426 Rhode Island Street.

In June 2012, Linda Jean Willis purchased the property at the Harris County Tax Auction. Thereafter, she paid the taxes, and her husband mowed the yard until one time when White called the police, who advised them to sort out their differences in court.

2

Willis answered White's lawsuit, denying his allegation that he owned the property by adverse possession. In her answer, she described the property as "an open driveway, unfenced and vacant lot that is on record with the City of Houston as being nuisance." She alleged that from 1976 to 2002 there were 20 liens placed on the property for cleaning the lot of debris and weeds. In 2015, the parties went to the Justice of the Peace court regarding a dispute about the property.[1] The parties' claims were dismissed, and, after the hearing, White offered to buy the property from Willis for $1,000.

At trial, White testified that the lot was adjacent to his house, which was his childhood and lifelong home, except for a few years in the 1970s when he served in the military. He testified about the prior ownership of the lot by Matthews, his decades of upkeep, the costs associated with the upkeep (including the costs of owning and maintaining his lawn mower and weed eater). He said he recorded the lien for the upkeep because "I wanted the property." The trial court asked White: "Has there been anyone that you have indicated to that you actually own the

---

[1]     The appellate record in this case does not include the records from the suit in the JP court. At trial, Alfred Willis testified that after White sued in JP court, the Willises countersued seeking an order for White to remove personal property from the lot. White did not testify about the nature of the suit, but while questioning Willis and in his closing statement, he implied that the suit was dismissed for lack of jurisdiction because the parties filed suit in Pasadena, Texas about property located in Houston, Texas.

property?" White testified: "No, I—I just put the lien and been keep it up for the last 40 years." The court asked him about the "hostile" element of adverse possession:

> Court: So you—I'm reading your complaint to quiet title, and it says that you have maintained possession of the property in an actual open, hostile, continuous, and exclusive possession. What is the hostile? What would you consider evidence to substantiate hostile?
>
> White: Well, it was—it was—it was just growed up weeds and stuff, and I had to get it—before my moms [sic] died and stuff, she called the City, and my mother say, This is your chore from 15. I had to keep that lot, because we had rodents and everything in our house, and that's why I kept it like I kept it.

Linda Jean's husband, Alfred Willis, cross-examined White about the amount of his claimed lien.

Alfred Willis testified about purchasing the lot with his wife in June 2012, paying taxes, and White's offer to buy the lot from him for $1,000. Willis testified that he grew up in the same neighborhood as White, the same neighborhood where the lot was located. Mr. Willis testified:

> [W]here I grew up at, we cut the lot next to us for 20 years, but we knew it wasn't ours. And that's kind of how it is in that far east side-type neighborhood where they are small lots. And at one point it was just, you know, real people living there, and that's why when the house went down, people just cut the yard. Nobody wants weeds next to their lot.

The evidence showed that, on multiple occasions from the 1990s through the early 2000s, the City found the condition of the lot to violate ordinances, cleared

4

the lot, and recorded liens to cover cleanup costs. White presented records of 14 payments he made from 1980 to 2015 to someone to clean the lot.

After the close of evidence and closing statements, the trial court explained that White's complaint had only a sole cause of action for adverse possession. He did not plead a claim for foreclosure on the lien. The Court found "that there is no evidence of adverse possession sufficient to sustain a finding of title," and it rendered judgment quieting title in Linda Jean Willis's name.

## Analysis

On appeal, White argues that the trial court erred in rendering judgment quieting title in Linda Jean Willis. He argues that his evidence satisfied the elements for adverse possession under the 10-year limitations period and that his title to the property vested before 2012. We read White's argument to challenge the sufficiency of the evidence to support the trial court's judgment. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("Appellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver. . . . Simply stated, appellate courts should reach the merits of an appeal whenever reasonably possible."); *see also Wheeler v. Green*, 157 S.W.3d 439, 444 (Tex. 2005) (per curiam) (pro se litigants held to same standards as licensed attorneys).

**I.      We apply the usual standards for legal and factual sufficiency review.**

When a party challenges the legal sufficiency of an adverse finding on an issue on which that party had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *Charles v. Walker*, No. 01-23-00478-CV, 2024 WL 5126844, at *3 (Tex. App.—Houston [1st Dist.] Dec. 17, 2024, no pet.) (mem. op.). A matter is conclusively established if reasonable people could not differ as to the conclusions to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he has the burden of proof, he must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.*, 46 S.W.3d at 242. The court of appeals must consider and weigh all the evidence and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

In a bench trial, the trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Zenner v. Lone Star Striping & Paving L.L.C.*, 371 S.W.3d 311, 314 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). In resolving factual disputes, the trial court may choose to believe one

witness and disbelieve others, and it may resolve any inconsistencies in a witness's testimony. *Id.*

## II. A claim of title to land by adverse possession may be asserted in a trespass to try title action.

"[A] trespass-to-try-title action 'is the method of determining title to lands.'" *Brumley v. McDuff*, 616 S.W.3d 826, 831–32 (Tex. 2021) (quoting TEX. PROP. CODE § 22.001(a)). In a trespass-to-try-title action, a plaintiff may prove legal title by establishing title by limitations, that is, by adverse possession. *Id.* at 832. Adverse possession requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1). "The concept of adverse possession allows a person to claim title to real property presently titled in another." *Bynum v. Lewis*, 393 S.W.3d 916, 918 (Tex. App.— Tyler 2013, no pet.).

"The doctrine of adverse possession is based on statutes of limitation for the recovery of real property." *Wells v. Johnson*, 443 S.W.3d 479, 488 (Tex. App.— Amarillo 2014, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE §§ 16.021– .037). "[I]n the context of a dispute concerning possession of real property, the rightful owner of the property must institute suit within a specified period of time (three, five, ten or twenty-five years depending on various statutory factors and conditions) or subsequently be barred from recovery." *Id.* Adverse possession

7

requires "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 69 (Tex. 2011) (quoting TEX. CIV. PRAC. & REM. CODE § 16.021(1)); *Yanez v. Pines Condo. Ass'n, Inc.*, No. 01-25-00041-CV, 2025 WL 1853458, at *4 (Tex. App.—Houston [1st Dist.] July 3, 2025, no pet.).

### III. White's evidence was legally and factually insufficient to support his claim for adverse possession.

To prove adverse possession, a claimant must establish six elements: (1) actual possession of the disputed property, (2) that is open and notorious, (3) that is peaceable, (4) under a claim of right, (5) that is adverse or hostile to the claim of the owner, and (6) consistent and continuous for the duration of the statutory period. *Dyer v. Cotton*, 333 S.W.3d 703, 710 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *see also Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990).

In this appeal, White argues that the appropriate statutory time period is ten years. TEX. CIV. PRAC. & REM. CODE § 16.026(a). "To establish adverse possession under this statute, the claimant must demonstrate that he actually and visibly appropriated the land for ten or more consecutive years, such that his use of the land gives the true owner notice of the hostile claim." *Dyer*, 333 S.W.3d at 710 (citing *Rhodes*, 802 S.W.2d at 645); *see also Masonic Bldg. Ass'n v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("The test for

hostility is whether the acts performed by the claimant on the land and the use made of the land were of such a nature and character as to reasonably notify the true owner of the land that a hostile claim was being asserted to the property."); *McDuff v. Brumley*, No. 07-17-00248-CV, 2022 WL 3154818, at \*6 (Tex. App.—Amarillo Aug. 8, 2022, pet. denied) (mem. op.) (holding that evidence showed actual, visible, and hostile possession when Brumleys purchased interest in disputed land from prior possessor, immediately informed McDuff they would be new neighbors, sent McDuffs demand letter regarding trespassing damages, and made numerous physical improvements including fencing, dozens of "no trespassing" signs, locked gates, grated roads, livestock corral, hunting blinds, water tanks, water lines, game feeders, deer cameras, and wheat for cattle grazing). The possession of the land must "indicate unmistakably an assertion of a claim of exclusive ownership in the occupant." *Rhodes*, 802 S.W.2d at 645 (quoting *Satterwhite v. Rosser*, 61 Tex. 166, 171 (1884)); *see also Rick v. Grubbs*, 147 Tex. 267, 214 S.W.2d 925, 927 (1948)). If "no verbal assertion of claim to the land [is] brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed." *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781, 787 (1954); *see Dyer*, 333 S.W.3d at 710.

**A.**     **White did not have vested title to the lot prior to the 2012 tax sale.**

White asserts in his brief that title vested in him by operation of law prior to the tax sale. It did not. "[A]dverse possession constitutes a 'claim' until the claim is adjudicated and transformed into ownership of record." *Session v. Woods*, 206 S.W.3d 772, 777 (Tex. App.—Texarkana 2006, pet. denied). Prior to 2012, White had not asserted his claim of ownership in court, and there had been no adjudication in his favor. While he may have had a claim for adverse possession, he did not have title to the property.

Moreover, the Texas Tax Code limits the time for filing an action challenging the validity of a tax sale and requires the party filing such an action to deposit into the registry of the court an amount equal to the delinquent taxes, penalties, and interest specified in the foreclosure judgment, plus all costs of the tax sale, or alternatively, files an affidavit of the inability to do so. *See* TEX. TAX. CODE § 34.08; *Session*, 206 S.W.3d at 779. In the absence of an action in accordance with these procedures, "[t]he purchaser may conclusively presume that the tax sale was valid and shall have full title to the property free and clear of the right, title, and interest of any person that arose before the tax sale" subject to exceptions not present in this case. White did not follow these procedures.

## B. White's evidence was insufficient to prove adverse possession.

White's evidence does not establish his ownership by adverse possession during the ten years prior to 2024 when he filed suit. First, he provided no evidence of actual and exclusive possession of the lot. An adverse possession claimant must prove that his possession of the land is exclusive, that he "wholly exclude[d] the owner from the property." *Harlow v. Giles*, 132 S.W.3d 641, 646–47 (Tex. App.—Eastland 2004, pet. denied). In his brief, White argues that he posted "no trespassing" and "private property" signs on the lot, but no such evidence appears in the record on appeal. The undisputed evidence, including photographs admitted at trial, is that the property was an open vacant lot. The only evidence of him excluding the owner from the lot is that he once called the police when Alfred Willis was mowing the grass.

White produced evidence, including his testimony, of mowing the grass and removing debris on the lot over a long period of time. White's evidence included records of paying someone once a year or once every several years to clear the lot. White also testified about using his riding mower and a weed eater to maintain the lot himself. The evidence also indicated that, at times, the City found his efforts inadequate, cleared the lot itself, and imposed liens for the costs of cleanup. Other evidence, including photographs, showed that White sometimes parked cars or trucks on part of the lot.

A reasonable factfinder could conclude from this evidence that White mowed the grass, removed debris, and cleared overgrowth at some interval over a long period of time. But "mowing the grass and planting flowers does not constitute a hostile character of possession sufficient to give notice of an exclusive adverse possession." *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985). Parking vehicles on an adjoining lot can be evidence that supports a claim for adverse possession in combination with other facts. *See, e.g.*, *W. End API Ltd. v. Rothpletz*, 732 S.W.2d 371, 375 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (use of adjoining property as parking lot supported claim for adverse possession when accompanied by improvements including paving, painting stripes, building retaining wall, posting signs regarding towing); *Fuentes v. Garcia*, 696 S.W.2d 482, 485–86 (Tex. App.—San Antonio 1985, no writ) (holding that parking car on adjoining lot suited to such use was evidence to support adverse possession claim when lot fenced together with adjoining lot or when rooms had been added to house on adjoining lot). Here, the evidence shows that White sometimes parked cars or trucks on part of the property near his house on the adjacent lot. But he made no improvements on the disputed property and did not build a fence.

When the trial court directly asked White what evidence he had to satisfy the required adverse possession element of hostility, he testified about his mother assigning the chore to him when he was teenager to keep rodents out of the house.

12

White's evidence did not show that his use of the land was of such nature and character to reasonably notify the true owner that he was asserting a hostile claim to the property. *See Masonic Bldg. Ass'n*, 177 S.W.3d at 472. Thus, White's evidence was legally and factually insufficient as a matter of law. *See City of Keller*, 168 S.W.3d at 816; *Dow Chem. Co.*, 46 S.W.3d at 241. Therefore, the trial court did not err by quieting title in Linda Jean Willis.

## Conclusion

We affirm the judgment of the trial court.

Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.